UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
                                         :
                                         :        07 Cr. 814(JFK)
            -v    -                      :        **MEMORANDUM**
                                         :        **OPINION & ORDER**
                                         :
                                         :
RODOLPHE NOGBOU,                         :
                                         :
                 Defendant.              :
----------------------------------------X
**JOHN F. KEENAN**, **United States District Judge**:

### BACKGROUND

Defendant Rodolphe Nogbou ("Nogbou" or "Defendant") has

moved in limine for an order (i) directing the disclosure, or

alternatively the in camera inspection, of portions of the

personnel file of Court Security Officer ("CSO") Vincent Esposito

("Esposito"); (ii) precluding the Government from cross-examining

Nogbou about his February 28, 2007 conviction for disorderly

conduct; and (iii) issuing a Rule 17(c) subpoena to the New York

City Police Department ("NYPD") for CSO Esposito's personnel

records.

Nogbou was charged in a single-count indictment with

assault on a federal officer, in violation of 18 U.S.C. § 111(a).

The Government alleges that, on August 22, 2007, while in the

process of clearing a security checkpoint and entering the United

States District Courthouse for the Southern District of New York,

at 500 Pearl Street, Nogbou intentionally struck Esposito in the

1

face while Esposito was checking Nogbou's person with a metal
detector, or security wand, resulting in injury to Esposito.

*(i) Inspection of Esposito's Personnel File*

The defense seeks to inspect, or to have the Court
inspect <u>in camera</u>, "solely those portions of the personnel files
of CSO Esposito and each the [sic] CSO the government seeks to
call as a witness which contain substantiated complaints for
prior abuse of authority, prior aggressive conduct, false
statements and inappropriate use of force which resulted [in]
disciplinary action to be taken against the witness." (Def. Mem.
¶ 13.)  The defense has offered no basis for its belief that
Esposito actually was the subject of a substantiated complaint
for prior bad conduct.  Rather, Defendant requests access to
Esposito's CSO file in order to determine whether any such
substantiated complaint in fact exists.

As authority for its request, the defense relies on
<u>Brady v. Maryland</u>, 373 U.S. 83, and its progeny, and on section
50 of New York's Civil Rights law, which governs the
confidentiality of the personnel files of New York state police
officers.  Under the <u>Brady</u> line of cases, the defense argues,
evidence of prior substantiated incidents where Esposito
demonstrated "abuse of authority, aggressive conduct, false
statements, [or] inappropriate use of force," (Def. Mem. ¶ 17),
constitutes impeachment material of the Government's witness,

2

within the meaning of Giglio v. United States, 405 U.S. 150
(1972), that the Government is obligated to disclose to the
defense.  Specifically, the defense argues that, to the extent
that Esposito's CSO file actually contains substantiated
complaints of prior bad conduct, the "requested material is
relevant impeachment material to [Nogbou's] proffered potential
defenses of self-defense or excessive use and/or abuse of
authority" by Esposito. (Id. § 18.)  Under section 50-a(2) of New
York's Civil Rights Law, the defense maintains, disclosure of
ordinarily confidential personnel files is warranted because
Nogbou's request is properly limited in scope to only
substantiated complaints of prior bad conduct by Esposito.

        The Government counters that it is aware of its
obligations under Giglio and will timely disclose material
impeachment evidence prior to the testimony of Esposito and its
other witnesses.  The Government objects, however, to the
defense's application as being premature and tantamount to a
request for an open-file review.  The Government notes that
Defendant has "identifie[d] no federal caselaw or statute
authorizing his review of the personnel files of the Government's
witnesses to determine whether impeachment material exists."
(Gov't Mem. at 5.)  To the extent that the defense relies on New
York's civil rights law, the Government asserts that the
defense's "unfounded speculation that impeachment material exists

3

in the personnel files for CSO Esposito and other CSO witnesses"
does not meet the clear showing of facts required under section
50-a(2) to warrant an order directing release of the personnel
files. (Gov't Mem. at 6.)

Neither the <u>Brady</u> line of cases nor section 50-a(2) of
New York's Civil Rights Law supports the defendant's request for
the inspection or <u>in camera</u> review of Esposito's personnel file.

<u>*Disclosure under* Brady</u>

Under <u>Brady</u>, the "prosecution has a constitutional duty
to disclose evidence favorable to an accused when such evidence
is material to guilt or punishment." <u>United States v. Coppa (In
re United States)</u>, 267 F.3d 132, 135 (2d Cir. 2001) (citing
<u>Brady</u>, 373 U.S. at 87).  This duty covers not only exculpatory
material, but also information that could be used to impeach a
key government witness. <u>See</u> <u>Giglio</u>, 405 U.S. at 154.  <u>Brady</u> does
not, however, require the prosecution to disclose all exculpatory
and impeachment material; it need disclose only material "that,
if suppressed, would deprive the defendant of a fair trial."
<u>United States v. Bagley</u>, 473 U.S. 667, 675 (1985).  In the
context of <u>Brady</u>, a defendant is deprived of a fair trial only
where there is a reasonable probability that the government's
suppression affected the outcome of the case, <u>see id.</u> at 682, or
where the suppressed evidence "could reasonably be taken to put
the whole case in such a different light as to undermine

4

confidence in the verdict," <u>Kyles v. Whitley</u>, 514 U.S. 419, 435, (1995).  The Second Circuit has stated that "as a general rule, <u>Brady</u> and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." <u>Coppa</u>, 267 F.3d at 132.  <u>Brady</u> material must be disclosed only in time for its effective use at trial.  <u>See</u> <u>id.</u> "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . ., as well as the particular circumstances of the case." <u>Id.</u>  The "Supreme Court has 'never held that the Constitution demands an open file policy' . . . [a]nd neither Brady nor Giglio require the government to produce every shred of paper that contains exculpatory or impeachment evidence that has otherwise been disclosed." <u>United States v. Forbes</u>, No. 02 Cr. 264, 2007 U.S. Dist. LEXIS 3346, at *12 (D. Conn. Jan. 17, 2007) (quoting <u>Kyles</u>, 514 U.S. at 437).

In <u>Coppa</u>, the Second Circuit addressed the issue of the Government's <u>Brady</u> obligations in the context of pre-trial disclosure of putative impeachment or exculpatory evidence.  The Circuit construed the Government's constitutional obligation as being defined retrospectively, post-conviction, rather than prospectively, in advance of trial:

> Although the government's obligations under Brady may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty - and, concomitantly,

> the scope of a defendant's constitutional right - is
> ultimately defined retrospectively, by reference to the
> likely effect that the suppression of particular evidence
> had on the outcome of the trial.

Coppa, 267 F.3d at 140.   Although the Coppa court rejected an

interpretation of Brady that required the government to disclose

all material exculpatory and impeachment evidence before trial on

the defendant's request, the Circuit observed that the "case

presents no occasion to consider the scope of a trial judge's

discretion to order pretrial disclosures as a matter of sound

case management" and remanded "to afford the District Court an

opportunity to determine what disclosure order, if any, it deems

appropriate as a matter of case management." Id. at 146 (emphasis

added).   In United States v. Stein, 424 F. Supp. 2d 720 (S.D.N.Y.

2006), Judge Kaplan construed Coppa as prohibiting the defendant

from making a pre-trial request for disclosure on Brady grounds.

Judge Kaplan, however, noted the court's "wide latitude . . . to

carry out successfully its mandate to effectuate, as far as

possible, the speedy and orderly administration of justice," and

directed the defendants in that case to address whether "sound

case management, as opposed to a supposed duty to disclose all

favorable evidence upon demand, warrants pretrial disclosure of

any of the material to which defendants are not otherwise

entitled." Id. at 727 (internal quotation marks and citation

omitted). See also United States v. Giffen, 379 F. Supp. 2d 337,

347 (S.D.N.Y. 2004) (the Government's responsibility to determine

when Giglio material should be disclosed "is subject to the authority of the court to determine, as a matter of sound case management"); United States v. Stora Enso N. Am. Corp., No. 06 Cr. 323, 2007 U.S. Dist. LEXIS 43382, at * 6-7 (D. Conn. June 5, 2007) (stating that, although "the responsibility for assessing whether evidence must be disclosed under Brady and Giglio rests with the government. . . .the Court retains discretion to order additional pre-trial disclosures of Brady and Giglio material").

Here, it is impossible to determine, in advance of trial, whether the evidence requested by Nogbou will be sufficiently material to fall within the ambit of Brady, in other words whether, if the evidence contained in Esposito's CSO file were to be suppressed, there is a reasonable probability that the suppression would affect the outcome of the trial. Although Brady does not require the Government to disclose Esposito's file on the defendant's request, Nogbou's application for pre-trial disclosure raises the question of "whether [the Court] should exercise [its] discretion to order the requested disclosure 'as a matter of sound case management.'" United States v. Stein, 473 F. Supp. 2d 597, 600 (S.D.N.Y. 2007) (quoting Coppa, 267 F.3d at 140).

Sound case management counsels in favor of ordering in camera review of Esposito's CSO file. Factors to be considered include "whether pretrial disclosure is likely materially to

reduce the risk of either a mid-trial delay occasioned by the
need to pursue important evidence that could have been disclosed
earlier or, in the event of a conviction, the need for a new
trial to remedy an otherwise avoidable <u>Brady</u> violation." <u>Stein</u>,
473 F. Supp. 2d at 603.  Here, evidence of substantiated
allegations of Esposito's prior bad acts could be favorable and
material to the defense.  Substantiated allegations of any prior
false statements made by Esposito would, of course, constitute
impeachment material, which the Government would be expected to
disclose in sufficient time for the defense to make use of at
trial under its <u>Giglio</u> obligations.  Less obviously,
substantiated allegations of Esposito's prior use of unlawful or
excessive force could arguably furnish the defense with Rule
404(b) evidence of Esposito's motive or intent to cause harm to
Nogbou during the August 22, 2007 incident and thus provide
Nogbou with exculpatory support for his theory of self-defense.
<u>See, e.g.</u>, <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 n.1 (2d Cir.
1988) (officer's prior use of excessive force admissible under
Rule 404(b) to show an "aggravated state of mind"); <u>Eng v.
Scully</u>, 146 F.R.D. 74, 80 (S.D.N.Y. 1993) ("A plaintiff in an
excessive force case is entitled to prove by extrinsic evidence
of other instances that the police officer defendant acted
maliciously and sadistically for the very purpose of causing
harm.") (internal quotation marks and citations omitted); <u>Ismail</u>

8

v. Cohen, 706 F. Supp. 243, 253 (S.D.N.Y. 1989) (allowing
introduction of police officer's Civilian Complaint Review Board
complaint for excessive use of force in prior arrest under Rule
404(b) because prior act demonstrated "a relevant pattern in
which plaintiff intends to show that Officer Cohen has a pattern
of lashing out physically when he feels his authority is
challenged by a citizen with whom he is dealing on the street").
It is debatable whether the Government would determine that
evidence of Esposito's prior use of excessive force was
sufficiently material within the meaning of Brady to warrant
disclosure, even though the failure to disclose such evidence
could be deemed, retrospectively, to constitute a Brady
violation.  Thus, in an excess of caution, in camera review of
Esposito's personnel file is warranted to "reduce the risk of . .
. the need for a new trial to remedy an otherwise avoidable Brady
violation." Stein, 473 F. Supp. 29 at 603.  In addition, such
review will prevent potential mid-trial delay.  Further, no
prejudice would result to the Government from the Court's in
camera review of Esposito's personnel file.

        However, there is no basis for the Court to order the
Government to disclose or submit for in camera review the
personnel files containing substantiated complaints for "each
[of] the CSO[s] the government seeks to call as a witness". (Def.
Mem. ¶ 13.)  Under Nogbou's theory of self-defense, the only

physical contact that occurred during the August 22, 2007 incident was between Nogbou and Esposito. (See Def. Mem. § 9.) There is no indication that other CSOs made any physical contact with Nogbou or otherwise acted to cause Nogbou to react in self-defense.  Thus, any prior conduct of CSOs other than Esposito involving aggressive behavior or excessive force would have no bearing on Nogbou's claim that Esposito's actions caused Nogbou to react in physical self-defense.  It is not necessary, therefore, for the Court to examine the personnel files of other CSOs to determine if there exist "substantiated complaints for prior abuse of authority, prior aggressive conduct, . . .and inappropriate use of force." (Id.)   Insofar as Defendant seeks evidence of substantiated complaints for "false statements," (id.), the Government may be entrusted to fulfill its clear Giglio obligation to disclose prior false statements by its witnesses.  Thus, to the extent that Nogbou seeks to inspect or have the Court inspect the personnel files of CSOs other than Esposito, the request is denied.

        In sum, the Court exercises its discretion to direct the Government to submit Esposito's CSO personnel file to the Court for in camera review.  To the extent that I determine that material within the personnel file need not be disclosed, the contents of the file will be filed under sealed for appellate review.

10

*Disclosure under Section 50-a*

Defendant's reliance on New York's Civil Rights Law is misplaced.  N.Y. Civ. Rights Law §50-a "provides that the personnel files of police officers are not to be disclosed except by consent of the individual or pursuant to court order." <u>Mercado v. Division of N.Y. State Police</u>, 989 F. Supp. 521, 522 (S.D.N.Y. 1998).  A court order directing disclosure shall not be issued "without a clear showing of facts sufficient to warrant the judge to request records for review." N.Y. Civil Rights Law § 50-a(2). Section 50-a "does not govern discovery in federal cases," unless the court determines that a plaintiff's interest in disclosure outweighs the state's "legitimate concern of protecting the confidentiality of the officers' personnel files from unnecessary intrusions." <u>Id.</u>  In the context of federal litigation, Section 50-a is typically invoked by defendants in non-criminal civil rights litigation who seek to prevent disclosure of state officers' personnel files. <u>See, e.g.</u>, <u>Melendez v. Greiner</u>, No. 01 Civ. 7888, 2003 U.S. Dist. LEXIS 19084, at *14-15 (S.D.N.Y. Oct. 23, 2003) (citing cases).  At the outset, the Court notes that it could find no federal criminal case in which section 50-a(2) is invoked, let alone invoked by a criminal defendant as authority for the defendant's request to <u>permit</u> disclosure of an officer's personnel files.  Further, it is unclear at this juncture whether section 50-a is applicable to Esposito.  As discussed below, it

11

is unknown whether Esposito was formerly employed by the NYPD or other New York state or municipal police agency. Section 50-a governs only those personnel records that are "under the control of any police agency or department of the state or any political subdivision thereof including authorities or agencies maintaining police forces of individuals defined as police officers in section 1.20 of the criminal procedure law." N.Y. Civ. Rights Law §50-a(1). Section 1.20 of New York's Criminal Procedure Law, in turn, "does not encompass federal agents of any kind." Scanlon v. Flynn, 465 F. Supp. 32, 37 (S.D.N.Y. 1978) . Thus, Defendant's invocation of section 50-a is irrelevant to the question of whether Esposito's federal CSO personnel file should be disclosed to the defense or submitted to the Court for in camera review.

Regarding the applicability of section 50-a to the defense's request for Esposito's NYPD file, as discussed below, it remains to be seen whether Esposito ever worked for the NYPD or any other "police agency or department of the state or any political subdivision thereof." Thus, Nogbou's request for disclosure of Esposito's NYPD personnel file, pursuant to section 50-a, is denied without prejudice pending the determination of whether Esposito formerly was employed by the NYPD or any other "police agency or department of the state or any political subdivision thereof" within the meaning of Section 50-a.

*(ii) Cross-Examination of Defendant Regarding Prior Conviction*

The government consents to be precluded from cross-examining Nogbou regarding his February 28, 2007 conviction for disorderly convict, in violation of New York Penal Law § 240.20, and the underlying facts of that conviction.

*(iii) Rule 17 Subpoena of Esposito's NYPD Personnel File*

The defense requests that the Court issue a subpoena duces tecum, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, to the Legal Bureau of the NYPD seeking "the personnel file of Vincent Esposito." (Def. Mem., Proposed Subpoena Duces Tecum, Sched. A.)  The Government opposes issuance of the subpoena on two grounds.  First, the Government protests that "the subpoena constitutes a fishing expedition and the defendant has failed to articulate any relevant documents that exist in CSO Esposito's personnel file with the NYPD." (Gov't Mem. at 11.)  Second, the Government objects that the subpoena is designed solely to discover possible impeachment material, which is an improper purpose under Rule 17(c).

It is unclear at this juncture whether Esposito in fact was formerly employed by the NYPD.  The Government characterizes the defense's request as "speculat[ion]" that Esposito worked for the NYPD. (Id. at 9.)  It would be premature to rule on Defendant's request for the issuance of a subpoena to the NYPD without knowing whether the NYPD, or any other New York state

agency or agency subdivision, in fact employed Esposito.
Accordingly, the Government is directed to ascertain from
Esposito and then inform the Court whether Esposito was ever
employed by the NYPD or other state agency or subdivision and, if
he was so employed, the position he held and the approximate
dates of the employment.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(i) The Government shall submit Esposito's CSO
personnel file to the Court for in camera inspection no later
than November 30, 2007;

(ii) The Government is precluded from cross-examining
Defendant regarding the fact or underlying circumstances of his
February 22, 2007 conviction for disorderly conduct; and

(iii) The Government is directed to ascertain of CSO
Esposito whether he was formerly employed by the NYPD or any
other state policy agency and inform the Court accordingly, no
later than November 30, 2007.

SO ORDERED
November /9 , 2007

JOHN F. KEENAN
United States District Court

14