# ALAN M. NELSON
### ATTORNEY AT LAW

3000 MARCUS AVENUE, SUITE 1E5
LAKE SUCCESS, NEW YORK 11042
TELEPHONE: (516) 328-6200
FAX: (516) 328-6354

NEW YORK OFFICE:
111 JOHN STREET
SUITE 640
NEW YORK, NY 10038

April 5, 2007

BY FEDERAL EXPRESS & ECF

Hon. John F. Keenan
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: United States v. Rodolphe Nogbou
         <u>O7 Cr. 814 (JFK)</u>

Dear Judge Keenan:

      Rodolphe Nogbou is scheduled to appear before your Honor on April 16, 2008 to be sentenced, pursuant to his conviction following trial to the above-captioned Indictment charging him with Assaulting, Impeding or Interfering with a Federal Agent, here Court Security Officer, Vincent Esposito, from the Performance of his Duties in violation of Title 18 United States Code section 111(a).

      Upon review of the Presentence Report prepared by the Probation Department the defendant disagrees with the Guideline Computation contained in PSR Paragraphs 13-23 which provide that Nogbou's Adjusted Offense Level is 15 and his Criminal History Category is I, with a sentencing range of 18-24 months incarceration.

      Rather, the defendant submits that Nogbou's Adjusted Offense Level is 7. Having a Criminal History Category of I, his sentencing range should be 0-6 months imprisonment.

## GUIDELINE ANALYSIS

      The defendant submits that the jury having acquitted Nogbou of the enhanced penalties of 18 U.S.C. 111(b), Aggravated Assault, pursuant to the Application Note to U.S.S.C. 2A2.3 the Court must apply U.S.S.G. 2A2.2. "Minor Assault" rather than U.S.S.G. 2A2.4 "Obstructing

Hon. John F. Keenan
April 5, 2008
Page 2

or Impeding Officers" as applied by Probation. Application Note 1 of U.S.S.G. 2A2.3 states "Minor Assault" means a misdemeanor assault, or a felonious assault not covered by 2A2.2 (Aggravated Assault). Therefore Application note 1 makes clear that under the instant circumstances, taking into consideration both the jury's verdict and the uncontradicted trial evidence U.S.S.G. 2A2.2 must be applied by the court in determining the appropriate guideline range when sentencing the defendant. To do otherwise would clearly be a violation of both the Application Note and Apprendi v. New Jersey, 530 U.S. 466 (2000).

The defense submits that in applying U.S.S.G. 2A2.3 Nogbou's Base Offense Level is 7, the offense having involved physical contact. (See U.S.S.G. 2A2.3(1)). Nogbou further contends that the 2 level enhancement provided for in 2A2.3(b)(1) is not applicable the jury having determined by its verdict that physical injury was not proven.[1] Accordingly, the defendant submits that Nogbou's Advisory Guideline Level is 7 and with a Criminal History of I his Guideline Range is 0-6 months. Were the court to determine that the enhancement is applicable Nogbou's Guideline Range at Level 9 would be 4-10 months.

By this memorandum and for the reasons more fully set forth herein Rodolphe Nogbou respectfully requests that the court impose a sentence of Time Served based upon all the factors set forth in 18 U.S.C. 3553(a), Gall v. United States, 06-7949, __ S.Ct. __ (2007), Kimbrough v. United States, 06-6330, __ S.Ct. __ (2007); United States v. Booker, 125 S.Ct. 738 (2005) and United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005). Having been incarcerated since August 22, 2007, Nogbou has been incarcerated for period of 8 months, at the high end of what is submitted is the Guideline. Moreover, a BICE detainer having been lodged upon the defendant upon imposition of a sentence of Time Served rather than being released from custody Nogbou will be transferred to BICE custody. He will in all likelihood then be removed to his native Ivory Coast following the completion of deportation proceedings. It is therefore submitted that a sentence of Time Served would indeed be a "reasonable sentence" following consideration of the factors set forth in 18 U.S.C. 3553.

Alternatively were this Court to disagree with the defendant's guideline analysis Nogbou submits that in applying the factors set forth in 18 U.S.C. 3553 a sentence of Time Served would likewise be both reasonable and appropriate.

Therefore, please accept this memorandum as an effort, pursuant to United States Sentencing Guidelines section 6A1.3, to focus the Court's attention on those issues important to the determination of the defendant's sentence so as to facilitate the imposition of an appropriate sentence.

---

[1] The defendant submits that Probation's reliance upon United States v.Watts, 519 U.S. 148 (1977) and United States v. Concepcion, 983 F.2d 369 (1992) is misplaced. Both decisions were sub silentio rendered moot by Apprendi, supra.

## ARGUMENT

In the wake of Gall v. United States, 552 U.S. ___(2007), and Kimbrough v. United States, 552 U.S. ___(2007) the sentencing landscape has significantly changed.

As Justice Stevens states in Gall:

> "The guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider all of the 3553(a) factors to determine whether they support the sentence requested by a party. In doing so, he may not presume that the Guideline range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an out-side-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance."

Gall at p.12.

Gall makes clear that the court must determine the guideline range, without presuming it is the reasonable sentence for the case at hand and then evaluate all of the factors set forth in 18 U.S.C. 3553 to determine what is a reasonable sentence.

It is submitted that the nature and circumstances of the defendant's commission of the offense warrant the imposition of a sentence of Time Served.

In the wake of United States v. Booker, 125 S.Ct. 738 (2005) the Second Circuit in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005) has instructed district courts with some pertinent suggestions as to the appropriate procedure to follow in sentencing. In so doing the court has instructed that although the Sentencing Guidelines are no longer mandatory the sentencing court must consider the guidelines which *normally* require determination of the applicable guideline range. The court should then, after considering all the additional factors set forth in 18 U.S.C. 3553(a) decide whether (i) to impose a sentence that would have been imposed under the guidelines (i.e. a sentence within the applicable guidelines range or within permissible departure authority), or (ii) to impose a non-guideline sentence. (Crosby supra )

In considering the imposition of a non-guideline sentence it is respectfully requested that the court consider the factors articulated in 18 U.S.C. 3553(a) as they apply to Rodolphe Nogbou. In so doing Crosby directs the sentencing court to evaluate all of the factors

Hon. John F. Keenan
April 5, 2008
Page 4

enumerated in 18 U.S.C. 3553(a) to determine an appropriate sentence. The first factor 3553(a) instructs the court to consider is the nature and circumstances of the offense and the history and characteristics of the defendant.

## NATURE & CIRCUMSTANCE OF THE OFFENSE

The Indictment alleges that on August 22, 2007 as Nogbou was attempting to enter the Worth Street entrance to the United States District Courthouse located at 500 Pearl Street he "intentionally struck Court Security Officer Vincent Esposito ("CSO Esposito") in the face...causing CSO Esposito to suffer cuts and abrasions and resulting in the need for the CSO to receive medical attention." Paragraph 2(b) of the Criminal Complaint alleges that Nogbou "punched" the CSO in the face.

The incident is almost completely captured on the Court Security Surveillance Camera which the defense requests the Committee to review when considering this application.

As discussed in more detail herein a review of the video fails to reveal any evidence to support the allegation that Nogbou "punched" CSO Esposito. The defense recognizes that such proof is not required to demonstrate a violation of 18 U.S.C. 111. However the lack of any observable "punch" to CSO Esposito's face certainly tends to contradict the initial basis for Nogbou's arrest. Moreover close review of the events by the jury clearly demonstrates by its verdict that it rejected such a contention.

### Elements of 18 U.S.C. 111

Section 18 U.S.C. 111 (a) provides:

> "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any federal officer while engaged in or on account of the performance of his duties is guilty of the offense".

There are four elements to the simple offense:

First, that the victim was a federal officer;

Second, that the defendant *forcibly* assaulted, or resisted, or opposed, or impeded, or intimidated, or interfered with the victim and this forcible action involved actual physical contact with the victim;

>Third, that at the time the victim was engaged in the performance of his duties ; and

>Fourth, the defendant acted willfully.

As discussed below, the defendant submits that a review of the video reveals that significant factual issues exist concerning the second a fourth elements, i.e whether Nogbou acted "willfully" and "forcibly".

*i. Forcibly*

Forcibly means by use of force. Physical force is obviously sufficient. So too is a defendant's present ability yo inflict bodily harm coupled with a threat or attempt to inflict present bodily harm. See Sand, Federal Jury Instructions, Instruction 14-4.

Although the government need only prove that Nogbou did any one of the several alternative acts (assault, resist, oppose, impede, intimidate, or interfere), all of the acts are modified by the word *"forcibly"*. Therefore the government must demonstrate Nogbou's use of force. Moreover the jury was required to be unanimous as to which of the following alternative acts Nogbou forcibly engaged in.

"Assault" is the unlawful attempt with force and violence to do injury to the person of another. "Resist" is to oppose by physical power, striving against, exerting one's self to counteract, defeat or frustrate. "Oppose" is to resist by physical means; "Impede" is to stop progress, obstruct or hinder; "Intimidate" is to make timid or fearful, to inspire or affect with fear, to frighten, deter or overawe; and to "Interfere with" is to come into collision with, to intermeddle, to hinder, to impose, to intervene. See Sand, Federal Jury Instructions, Instruction 14-6, 14-7.

*ii. Willfully*

"Willfully" means that the defendant acted voluntarily and intentionally and not by mistake or accident. Sand, supra, Instruction 14-9.

## Uncontroverted Facts

As stated above the existence of a surveillance video of the events allows for an objective review of the incident.

As a preliminary matter the Cour t is reminded that Nogbou was entering the Courthouse for a lawful purpose. He is a *pro se* litigant in a pending civil matter, *Nogbou v.*

Hon. John F. Keenan
April 5, 2008
Page 6

*City, et al.*, 07 Civ. 9515 (RSW). On August 22, 2007 he was seeking to enter the Courthouse for the purpose of filing an Amended Complaint which he was amongst the items recovered following his arrest.

A review of the video surveillance recording of the incident reveals that Nogbou, after passing through the metal detector in the lobby area was in the process of being further checked by CSO Esposito through the use of a metal detector or wand. The video reveals that Nogbou was wearing cover-alls which CSO Esposito had the defendant open the top straps of, apparently to facilitate closer inspection of the defendant's mid-section, in all likelihood due to a positive reading from the metal detector.

The video further reveals that as Esposito proceeds to check Nogbou's midsection with the wand there are arm movements by the defendant and a verbal exchange taking place between a number of CSO's and Nogbou.

As the video continues Nogbou can be seen returning to CSO Esposito. The defendant is observed holding up his coveralls as the CSO crouches and passes the wand in the vicinity of Nogbou's groin area.

It is at this point that it is believed that the alleged unlawful conduct occurred. The video, although not fully displaying the critical events at issue, clearly does not reveal a "punch to the CSO's face". Indeed Nogbou's arms are clearly visible throughout the incident and there is not as scintilla of evidence to demonstrate any form of intentional assaultive contact by Nogbou upon CSO Esposito at this point.

As the video continues Nogbou is observed being escorted by a number of CSO's back through the metal detector and gathering his belongings upon the security table as if to leave the Courthouse. As Nogbou is gathering his belongings the video depicts his being surrounded by a number of CSO's and placed in custody.

### Disputed Issues

Unfortunately the video is not accompanied by audio, hence the nature and substance of the discussions between Nogbou and CSO Esposito is not heard. However, the trial testimony, particularly of BICE Special Agent Brian Herbert, a disinterested witness with the best vantage point to view the incident is of significance.

Herbert's testimony makes clear that the critical event occurred as a result of Nogbou lifting his arms in an upward manner as CSO Esposito was scanning his waist area with the wand while bent downward. There is little doubt that Nogbou lifted his arms to move the wand away from his waist area. Nogbou perceived that the wand had was about to enter the interior

Hon. John F. Keenan
April 5, 2008
Page 7

of his bib which he subjectively believed was an unjustified intrusion of his privacy. As a result of Nogbou's lifting of his arms CSO Esposito's arms likewise came upward and apparently the wand then came into contact with his face. Accordingly the contact and resulting effects were clearly not intended by Nogbou to cause any injury to CSO Esposito.

Moreover the actions of Esposito and his fellow Offices likewise makes clear that they did not perceive his action to warrant an arrest until they observed that CSO Esposito was bleeding.

This version of the critical events is much more consistent with the clearly observable events contained in the video. When Nogbou pushed the wand away from his groin area he accidentally caused the wand to strike Esposito in the face, since he was clearly in a crouched position looking at the defendant's midsection at the time.

Indeed the injury sustained by Esposito "laceration next to his left eyebrow" is much more consistent with the wand accidentally coming into contact with him than a punch to the face.

This dispute in the facts created a significant question concerning whether Nogbou's conduct was "forcible" and whether it was "willful", as those terms are defined. Indeed the jury specifically requested clarification on these issues during their deliberations.

It is respectfully submitted that these factors make clear that what occurred is a simple assault as that term is defined in Application Note 1 to U.S.S.G 2A2.3.

## THE COURT SHOULD IMPOSE A SENTENCE OF TIME SERVED

As stated above Nogbou wished to enter the Courthouse for a lawful purpose. At the time of the disputed events Nogbou was complying with the proper requests of CSO Esposito as he further inspected his midsection with wand. Nogbou actions in pulling the wand away from his groin area were not done with the intention of preventing the CSO from performing his search. The action was certainly not done with the intention of causing injury to the CSO. Rather, Nogbou's conduct in pulling upon the wand was occasioned by his being offended by its close proximity to his groin.

The injury to CSO Esposito was certainly unintended and its proximate cause was the unfortunate consequence of the CSO being in a crouched position.

It appears from a review of the video that at least initially upon Nogbou pushing away the wand there was no attempt made to arrest him. To the contrary the video clearly depicts his being allowed to walk back through the metal detector and begin to pick up his personal

Hon. John F. Keenan
April 5, 2008
Page 8

belongings upon the table for the purpose of leaving the building.

Indeed Nogbou contends that after he pulled the metal detector from his groin his was requested to leave the building by the CSOs. Nogbou complained that he was being denied access to the building for a proper purpose. He then complied with the CSO's request and walked back through the metal detector to leave the building. As he gathered his personal effects from the security tray Nogbou continued to engaged the CSOs in discussion suggesting he would bring a civil action against them for denying him access to the court. He relates that as he was engaging in this discussion he attempted to active his cell phone informing the CSOs that he was intending to take their photographs to complain about his denial of access to the Court. It is at that time Nogbou alleges that he was placed in custody.

It is significant to note that the video, recovered evidence and the relevant portion of the Security Manuel for CSOs which governs the responsibilities of the Worth Street Magnetometer appears to corroborate much of Nogbou's position.

The Manuel provides:

> **Post 8 - Worth Street Magnetometer:** Uses a hand held detector to provide a more thorough search of the person that does not clear the walk through detector to determine the source of alarm; should the person continue to seek entry and the source of the alarm cannot be identified other methods may be used to discover the source of the alarm; should the person decide to leave without gaining entry they must be allowed to leave.

It is likely that the CSOs when unable to identify the location of the alert from Nogbou's midsection combined with his unwillingness to permit a closer inspection led to them instructing him to leave. When he then became indignant because he was being denied access and threatened the CSOs with legal action the officers had in essence "had enough" and proceeded to arrest him. It is significant to note that amongst Nogbou's personal effects a cellular telephone was recovered.

It appears that the events of August 22 were the result of a perfect storm of misperception, distrust and accident. Nogbou a homeless man carrying most of his belongings into the Courthouse was not perceived aby the CSOs as an individual with a valid basis for entering the building. A problem in the making. In turn Nogbou was distrustful of law enforcement personnel. Nonetheless, he passed the metal detector with no intention of interfering with the officers in performing their duties, indeed he wanted to enter. He certainly at no time had any intention of causing any injury to CSO Esposito.

Hon. John F. Keenan
April 5, 2008
Page 9

Fortunately, the injury appears to be rather slight, a small laceration near the eyebrow for which CSO Esposito was treated in the emergency room at New York Downtown Hospital and released.

Rodolphe Nogbou, a 37 year old native of the Ivory Coast entered the United States lawfully in 1982 upon a student visa. After leaving the University of Iowa he overstayed his visa and commenced legalization proceedings in 2005. At present he is unlawfully present in the United States and therefore subject to removal.

He has been unemployed and homeless since 2002 primarily supporting himself by collecting recyclable materials. Nogbou has one prior conflict with the law, a conviction for Disorderly Conduct.

In light of the nature and circumstances of the offense, clearly there exist significant factors for the Court to consider pursuant to 18 U.S.C. 3553 to impose a non-guideline sentence.

Nogbou has been in custody since the date of his arrest, August 22, 2007, 8 months. In light of his immigration status a detainer may be lodged upon him to facilitate his removal. Certainly the 8 month period of incarceration already served by Nogbou is a significant sentence considering the nature and circumstances of the events.

In United States v. Koon, supra, the Supreme Court found that the Sentencing Reform Act authorizes district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or to a degree not adequately taken into consideration by the Sentencing Commission. Justice Kennedy, writing for the Court advises that the Sentencing Commission has formulated each guideline to apply to a "heartland of typical cases". Atypical cases were "not adequately taken into consideration," and factors that may make a case atypical provide a potential basis for departure. Koon, supra, See U.S.Cr.L. Vol. 59, at p.2135.

Certainly the facts and circumstances set forth herein demonstrates that the events of August 22, 2007 were not the type of situation contemplated by the sentencing commission when promulgating U.S.S.G. 2A2.4 for offenses committed in violation of 18 U.S.C. 111.

The instant conduct was clearly not an intentional assault resulting in injury. Rather the events were the unfortunate culmination of misapprehension and accident leading to the unfortunate events of August 22, 2007.

It is respectfully submitted that in analyzing the nature and circumstances of the commission of the offense significant reasons exist for the court to exercise its discretion and impose a non-guideline sentence.

Hon. John F. Keenan
April 5, 2008
Page 10

In summary applying the factors set forth in 3553(a), the nature and circumstances of the commission of the offense and the history and characteristics of the defendant it is submitted that compelling factors exist for th imposition of a non-guideline sentence.

Similar analysis of the remaining criteria set forth in 3553 point likewise support the imposition of a non-guideline and non-incarceratory sentence. he second factor set forth in 3553(a) requires that the court consider the traditional sentencing objectives of punishment, rehabilitation and deterrence.

The third, fourth and fifth factors require that the court consider the kinds of sentences available, the sentencing Guidelines and pertinent policy statements promulgated by the Sentencing Commission.   It is respectfully submitted that....

## CONCLUSION

When the Court imposes sentence upon a person, it naturally takes into account many factors, including the traditional objectives of deterrence, punishment and rehabilitation, carefully balanced by the gravamen of the offense, the defendant's culpability, his background and any particular factors about the defendant that should and do demand special attention.  The Court is well aware of the facts of this case, having been provided the extensive case history set forth in the Presentence report and this document and therefore such will not be reviewed any further herein.

Rodolphe Nogbou stands before the court having been found guilty following trial of the lesser included offense of Assaulting, impeding or Obstructing Court Security Officer Esposito Police from the Performance of his Duties in violation of Title 18 United States Code 111(a).

In determining the sentence to be imposed, the court is faced with the task of balancing society's interests with those of the defendant.  In analyzing that juxtaposition, we would impress upon the Court the nature and circumstance of the offense and the fact that Nogbou will not be released from custody but face immediate removal.

Although not offered as an excuse for his conduct, Nogbou's participation in the offense, was a spontaneous act occasioned by his belief he was being improperly harassed by Court Security Officer Esposito.

These factors are indeed the type of factors that 18 U.S.C. 3553(a) and in the post Gall, Kimbrough and Booker era United States v. Crosby, supra mandate that the court consider in imposing sentence.  Rudolphe Nogbou asks that the court consider these factors in determining what sentence should be imposed.

Hon. John F. Keenan
April 5, 2008
Page 11

    For the aforementioned reasons we urge the Court to fashion a sentence recognizing Mr. Nogbou's status, conduct and minimal criminal history balanced by society's interests. In light of these factors, we urge the court to adopt the arguments set forth above.

    A sentence of Time Served, which is 8 months incarceration coupled with the fact that he will not be released from custody, but rather will be immediately transferred to BICE custody for removal proceedings would facilitate the goals set forth in the Parsimony clause of 18 U.S.C. 3553a. This clause provides that the court should impose a "sentence sufficient but not greater than necessary " to further statutory goals of the section

    Imposition of a sentence of Time Served would provide adequate punishment balanced against the nature of the offense. Nogbou's transfer to BICE custody for removal proceedings would allow him to be more expeditiously returned to his native Ivory Coast, thereby preventing any recidivistic conduct on his part. This would comport with the statutory requirement of protecting the public from any future conduct of the defendant.

                             Respectfully submitted,

                             Alan M. Nelson, Esq.

AMN/en

cc: AUSA John Cronin
    USPO Johnny Kim
    Rodolphe Nogbou