Lance Croffoot-Suede
Danielle M. Randazzo
Jared R. Jenkins
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
(+1) 212 903 9000 (Tel)
(+1) 212 903 9100 (Fax)

Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

United States of America,


                            v.                                    07 Cr. 814 (JFK)


Rodolphe Nogbou,

                                        Defendant.

------------------------------------------------x


## DEFENSE COUNSEL'S SENTENCING MEMORANDUM IN THE MATTER OF UNITED STATES v. RODOLPHE NOGBOU

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT........................................................................................... 1

    A.    OFFENSE BACKGROUND..................................................................... 1

    B.    THE PSR AND GUIDELINES ANALYSES ........................................... 2

ARGUMENT ........................................................................................................................ 4

I.    THE PROPER GUIDELINES SECTION APPLICABLE TO THIS OFFENSE IS SECTION 2A2.3.................................................................................................. 4

II.   THE COURT SHOULD NOT APPLY THE TWO-LEVEL UPWARD ADJUSTMENT FOR BODILY INJURY. ...................................................................................... 5

III.  THE COURT HAS DISCRETION TO IMPOSE A NON-GUIDELINES SENTENCE..... 7

    A.    THE NATURE AND CIRCUMSTANCES OF THE OFFENSE SUPPORT A NON-GUIDELINES SENTENCE OF TIME-SERVED..................................................... 9

CONCLUSION................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page**

### CASES

Gall v. United States,
128 S. Ct. 586 (2007) ..................................................................................................7, 8, 9

Kimbrough v. United States,
128 S. Ct. 558 (2007) ..................................................................................................7, 8, 9

United States v. Booker,
543 U.S. 220 (2005)......................................................................................................7, 8, 9

United States v. Crosby,
397 F.3d 103 (2d Cir. 2005) ............................................................................................7, 9

United States v. Collado,
No. 07 Cr. 1144 (HB), 2008 WL 2329275 (S.D.N.Y. June 5, 2008)..........................................12

United States v. Martinez,
413 F.3d 239 (2d Cir. 2005) ...............................................................................................9

United States. v. Vaughn,
430 F.3d 518 (2d Cir. 2005) ...............................................................................................6

### STATUTES

18 U.S.C. § 111(a), (b) ...............................................................................................1-5

### OTHER AUTHORITIES

U.S. Sentencing Guidelines Manual § 2A2.2 (2007)................................................................3, 4

U.S. Sentencing Guidelines Manual § 2A2.3 (2007)................................................................ 1-6

U.S. Sentencing Guidelines Manual § 2A2.4 (2007)................................................................ 1-7

.

## PRELIMINARY STATEMENT

Linklaters LLP, attorneys for Rodolphe Nogbou, respectfully submits this Sentencing Memorandum (the "Memorandum") to assist the Court in determining his sentence.[1] Mr. Nogbou respectfully requests that this Court impose a sentence of time-served for his violation of 18 U.S.C. § 111(a). Mr. Nogbou has been incarcerated since his arrest on August 22, 2007 and has served almost 12 months in jail.

This memorandum sets forth three different methods by which the Court may fashion a sentence of time-served for Mr. Nogbou. This Court may: (1) impose a 0-6 month sentence pursuant to United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") Section 2A3.3 because Mr. Nogbou's conduct is most readily classified as a minor assault;[2] (2) apply U.S.S.G. § 2A2.4 as proposed by the United States District Court for the Southern District of New York Probation Office (the "Probation Office") without the application of the two level upward adjustment; or (3) simply impose a non-Guidelines sentence pursuant to Title 18 U.S.C. § 3553(a).

### A.    OFFENSE BACKGROUND

Mr. Nogbou was charged in an indictment with "[a]ssaulting, resisting, or impeding certain officers or employees," specifically Court Security Officer Vincent Esposito ("CSO Esposito"), in violation of 18 U.S.C. § 111(a) and (b). On August 22, 2007, Mr. Nogbou, a pro se litigant in an unrelated civil matter, entered the United States Courthouse at 500 Pearl Street and attempted to pass through security at the Worth Street entrance of the Courthouse.

---

[1]    At the request of Mr. Nogbou and to insure that he is fully satisfied that all of his arguments and statements are included in the record, a letter from Mr. Nogbou detailing additional points he wishes to make in his own words to the Court is hereto attached as Exhibit A.

[2]    The Court may reach a sentence of time served with or without the two level upward adjustment recommended by the Probation Office, which is discussed infra.

Mr. Nogbou is a regular visitor to the Courthouse and was entering to file an Amended

Complaint in his civil action, Nogbou v. Lore, et al., 07 Civ. 8515 (RWS). While going through

the security line, an incident occurred that led to the indictment against him.[3] At his trial in

January 2008, the jury found Mr. Nogbou guilty of violating Section 111(a), but did not find Mr.

Nogbou guilty of violating Section 111(b).[4] This fact is pertinent because Section 111(b)

permits the Court to impose an enhanced penalty if the assault caused bodily injury. Notably, the

jury found that bodily injury was not sustained in this case.

**B.    THE PSR AND GUIDELINES ANALYSES**

As set forth in the Presentence Investigation Report (the "PSR") prepared by the

Probation Office, Mr. Nogbou has zero criminal history points and is in a Criminal History

Category of I. PSR, at p. 7. The PSR sets out a Guidelines range of 18-24 months of

incarceration with no possibility of probation pursuant to U.S.S.G. § 2A2.4.[5] PSR, at p. 6.

The defense respectfully submits that the Probation Office's calculation of Mr.

Nogbou's sentence is incorrect. The appropriate Guidelines calculation is 0-6 months of

incarceration pursuant to U.S.S.G. § 2A2.3. Applying U.S.S.G. § 2A2.3 assigns Mr. Nogbou a

---

[3]    The full text of the indictment follows:

"On or about August 22, 2007, in the Southern District of New York, Rodolphe Nogbou, the defendant, unlawfully, willfully, and knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 1114, while such person was engaged in and on account of the performance of official duties, and, in the commission of said acts, did inflict bodily injury, to wit, Nogbou intentionally struck Court Security Officer Vincent Esposito ("CSO Esposito") in the face…causing CSO Esposito to suffer cuts and abrasions resulting in the need for CSO Esposito to suffer cuts and abrasions and resulting in the need for CSO Esposito to receive medical attention, including stitches. (Title 18, United States Code, Section 111(a), (b).)"

The complaint states, "Nogbou punched the court security officer in the face while the Court Security Officer was using a wand to perform a Security Check."

[4]    Mr. Nogbou would like to note his continuing objection to the verdict form used during his trial and that the jury had specific questions about the form which were left unanswered. There are a number of issues that Mr. Nogbou plans to appeal after he is sentenced, including the language used in the verdict form. However, for purposes of sentencing only, he would like to be sentenced under 18 U.S.C. § 111(a).

[5]    A copy of defense's letter to the Probation Office objecting to the PSR is hereto attached as Exhibit B.

Base Offense Level of 7, as the offense did involve physical contact. See U.S.S.G. § 2A2.3(1).
As discussed more fully infra, the Court should apply U.S.S.G. § 2A2.3 ("Minor Assault") rather
than U.S.S.G. § 2A2.4 ("Obstructing or Impeding Officers") because: (1) Section 2A2.2 is an
alternative starting point from Section 2A2.4 for calculating a sentence when 18 U.S.C. § 111
has been violated;[6] and (2) Application Note 1 of U.S.S.G. § 2A2.3 defines "Minor Assault" as a
misdemeanor assault, or a felonious assault not covered by Section 2A2.2 ("Aggravated
Assault"). As a result, Section 2A2.3 is the appropriate Guideline to govern Mr. Nogbou's
sentence.

      Mr. Nogbou contends that the two level upward adjustment for bodily injury is
inapplicable because any contact that took place was minor and the jury determined that physical
injury was not proven. Accordingly, we respectfully submit that Mr. Nogbou's proper Advisory
Guidelines Level is 7. With a Criminal History of I, the appropriate Guidelines Range is 0-6
months.[7] It is important to note that Mr. Nogbou has already served twice the sentence at the
high end of this range.[8]

---

[6]   See U.S.S.G. Appendix A at 1881.

[7]   Were the Court to determine that the upward adjustment is applicable, Mr. Nogbou's Guideline Range at
Level 9 would be 4-10 months.

[8]   In the alternative, the defense submits that: (i) Section 2A2.4 with no upward adjustment for bodily injury
may also be applicable, which results in a sentence of 12-18 months; and (ii) if this Guidelines analysis is
adopted by the Court, Mr. Nogbou should be sentenced at the low end of that Guidelines range.

Finally, the defense respectfully submits that a non-Guidelines sentence is warranted in this case because
the circumstances surrounding the incident at the Courthouse were not contemplated by the U.S.S.G.

As discussed more fully infra, Mr. Nogbou has spent almost a year in jail and a sentence of time-served is
sufficient to achieve the goals of sentencing – retribution, deterrence, incapacitation, and rehabilitation.

## ARGUMENT

**I.    THE PROPER GUIDELINES SECTION APPLICABLE TO THIS OFFENSE IS SECTION 2A2.3.**

The jury acquitted Mr. Nogbou of the enhanced penalties of 18 U.S.C. § 111(b) by finding that no one suffered a bodily injury. Due to the jury's finding and the atypical nature of this case, the Court should apply U.S.S.G. § 2A2.3 ("Minor Assault") rather than U.S.S.G. § 2A2.4 ("Obstructing or Impeding Officers") as recommended in the PSR. PSR, at p. 6. The Statutory Index to the Guidelines state that either Sections 2A2.2 or 2A2.4 are applicable to sentences imposed after a conviction of 18 U.S.C. § 111. See U.S.S.G. Appendix A.

Section 2A2.4 governs sentences where a federal officer is obstructed or impeded in the performance of his/her duties. Mr. Nogbou never intended to, nor did, obstruct or impede the officers in the performance of their duties. As such, we respectfully submit that Section 2A2.2 is an alternative and proper starting point for sentencing Mr. Nogbou's violation of 18 U.S.C. § 111.

Next, because Application Note 1 of U.S.S.G. § 2A2.3 defines "Minor Assault" as a misdemeanor assault, or a felonious assault not covered by Section 2A2.2 ("Aggravated Assault"), Section 2A2.3 may be applied when determining sentences initially evaluated under Section 2A2.2. Mr. Nogbou's conduct was not an aggravated assault because it did not involve a dangerous weapon, serious bodily injury, or intent to commit another felony. See U.S.S.G. § 2A2.2 Application Note 1. The defense respectfully submits that Section 2A2.3 is the most appropriate section to use in calculating Mr. Nogbou's sentence because the conduct at issue is most appropriately termed a minor assault.[9]

---

[9]    U.S.S.G. § 3A1.2 is also inapplicable because Mr. Nogbou's conduct was not motivated by CSO Esposito's status as a government officer. See U.S.S.G. § 3A1.2(a).

4

Applying U.S.S.G. § 2A2.3, and the jury's verdict that the offense involved physical contact; Mr. Nogbou's Base Offense Level is 7. See U.S.S.G. § 2A2.3(1). As discussed infra, the two-level upward adjustment provided for in Section 2A2.3(b)(1) should not be applied because the jury determined there was no bodily injury. Accordingly, we respectfully submit that Mr. Nogbou's proper Advisory Guidelines Level is 7. With a Criminal History Category of I, his Guidelines Range is 0-6 months. Were the Court to determine that the upward adjustment is applicable, Mr. Nogbou's Guidelines Range at Level 9 would be 4-10 months. Notably, the high end of the enhanced Guidelines Range is still less time than Mr. Nogbou has already served; further demonstrating that a sentence of time-served adequately serves the goals of sentencing in this atypical case.

The facts and circumstances set forth infra establish that the events of August 22, 2007 were not contemplated by the Sentencing Commission when promulgating U.S.S.G. § 2A2.4 for offenses committed in violation of 18 U.S.C. § 111. The events of August 22, 2007 were the result of a miscommunication that unfortunately resulted in Mr. Nogbou having a minor incident with Court Security Officers while attempting to enter the United States Courthouse for a lawful purpose. We respectfully request that this Court apply U.S.S.G. § 2A2.3 and that the appropriate recommended sentence for Mr. Nogbou's conviction is 0-6 months.

## II.    THE COURT SHOULD NOT APPLY THE TWO-LEVEL UPWARD ADJUSTMENT FOR BODILY INJURY.

The Probation Office calculates a Total Offense Level of 15 in the PSR. PSR, at p. 6. The Probation Office begins its Guideline calculation by applying U.S.S.G. § 2A2.4 ("Obstructing or Impeding Officers") and determines that Mr. Nogbou's Base Offense Level is 10. Pursuant to U.S.S.G. § 2A2.4 a three-level upward adjustment is warranted because the offense involved physical contact. The Probation Office goes one step too far, however, and

5

recommends this Court impose an additional two-level upward adjustment on the basis that CSO Esposito sustained a bodily injury. PSR, at p. 5-6. As such, the PSR recommends a sentence of 18-24 months. PSR, at p. 15. The jury, however, found that no bodily injury occurred.

Although the Court has the discretion to consider acquitted conduct at sentencing as the PSR states,[10] a review of the facts supports the jury's finding that there was no bodily injury in this case. The two-level upward adjustment for bodily injury should not be added regardless of which section of the Guidelines the Court deems appropriate. Therefore, Mr. Nogbou would face a maximum Offense Level of 13 and a recommended sentence of 12-18 months if Section 2A2.4 is applied,[11] and a maximum Offense Level of 7 and a recommended sentence of 0-6 months if Section 2A2.3 is applied.[12]

While it is undisputed that CSO Esposito was treated at the scene and later taken to the emergency room, the severity of his injury is in dispute. Trial testimony demonstrates that immediately after the incident it was unclear whether CSO Esposito was bleeding.

> "Q: Did you see Officer Esposito bleeding at that time?
>
> MR. NOGBOU: No.
>
> THE COURT: Did you hear anybody mention the fact that he was bleeding?
>
> A: No."
>
> Tr. at 339:2-6.

---

[10]  See United States v. Vaughn, 430 F.3d 518 (2d Cir. 2005) (considering a jury's acquittal "when assessing the weight and quality of the evidence presented by the prosecution and determining a reasonable sentence.").

[11]  Mr. Nogbou's sentencing hearing is on August 14, 2008, just shy one week from a full year of incarceration. Coincidentally, twelve months is the low end of the Guidelines range using Section 2A2.4 without the upward adjustment for bodily injury.

[12]  If the upward adjustment for bodily injury is applied under Section 2A2.3, the maximum Offense Level is 9 and the recommended sentence is 4-10 months.

6

At the time of the alleged incident commotion did not ensue. Mr. Nogbou was allowed to, and indeed was, preparing to the leave the Courthouse. The video shows Mr. Nogbou returning to the beginning of the conveyor belt on the X-ray machine to retrieve his belongings in preparation to leave. It is a fair assumption that any injury endured by CSO Esposito was minor because the injury was not obvious to the people around him, it is unclear if he was even bleeding and most importantly—Mr. Nogbou was initially permitted to leave the Courthouse.[13] In fact, Mr. Nogbou was arrested only after he attempted to record the names of the CSOs involved in the incident and not as a direct reaction to CSO Esposito's injury.

In short, the physical contact between Mr. Nogbou and CSO Esposito should not be considered "bodily injury" under the definition given in the Guidelines because any injury was slight. The lack of bodily injury (which is supported by the jury's verdict that no bodily injury occurred) makes the two-level upward adjustment under U.S.S.G. § 2A2.4 excessive.

In essence, Mr. Nogbou has already served the low end of the Guidelines range under Section 2A2.4 without the upward adjustment for bodily injury as he will be incarcerated for all but a week of the full sentence. A sentence of time-served is warranted.

## III. THE COURT HAS DISCRETION TO IMPOSE A NON-GUIDELINES SENTENCE.

Even if the Court adopts the Guidelines calculation in the PSR, the Court has the discretion to impose a non-Guidelines sentence in this case. The Supreme Court recently reiterated the advisory nature of the U.S. Sentencing Guidelines in Gall v. United States, 128 S. Ct. 586 (2007) and Kimbrough v. United States, 128 S. Ct. 558 (2007). These two cases extended the line of cases that return sentencing discretion to the trial courts. See United States v. Booker, 543 U.S. 220 (2005); United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). A

---

[13]    The facts surrounding the incident are detailed in Section III(A).

7

sentencing court is no longer bound by the sentence calculated in accordance with the Guidelines
and may impose a sentence less than that recommended by the Guidelines if it is sufficient to
carry out the law.

      In Gall, the Supreme Court stated that the Guidelines should be the starting point
for the district court to calculate a sentence and not the only consideration. Gall, 128 S. Ct. at
596. The Court went on to state, "the district judge . . . may not presume that the Guidelines
range is reasonable. He must make an individualized assessment based on the facts presented."
Gall, 128 S. Ct. at 596-97. Courts must continue to consider all of the factors listed in 18 U.S.C.
§ 3553(a) when deciding a defendant's sentence rather than solely looking at the sentencing
range pursuant to the Guidelines.[14] In Kimbrough the Court calls Section 3553(a) an
"overarching provision," and emphasizes that it "permits the court to tailor the sentence in light
of other statutory concerns as well." Kimbrough, 128 S. Ct. at 570 (quoting Booker, 543 U.S. at
245-46).

      Under Section 3553(a), courts should consider a variety of factors, including the
nature and circumstances of the offense and the history and characteristics of the defendant,

---

[14]    Section 3553(a) provides that the court, in determining the particular sentence to be imposed, shall
consider--

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment
for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other
correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the
guidelines...
    (5) any pertinent policy statement...
    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have
been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.

8

whether the sentence will afford adequate deterrence to criminal conduct, and whether the sentence will protect the public from further crimes of the defendant.

This two-step sentencing process – considering the Guidelines and then independently looking at the 3553(a) factors – gives courts greater discretion when determining the appropriate sentence in a case. Gall, 128 S. Ct. at 594; Kimbrough, 128 S. Ct. at 574; Booker, 543 U.S. at 256; Crosby, 397 F.3d at 110-13; see also United States v. Martinez, 413 F.3d 239, 243 (2d Cir. 2005) ("[J]udges imposing sentence in accordance with Booker may exercise greater discretion than they could have exercised under the pre-Booker regime."). To assist it in making this determination, a court is entitled to find "all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence." Crosby, 397 F.3d at 113.

For the reasons set forth more fully below, and in light of the fact that this Court may impose a materially different sentence than a Guidelines sentence, the defense respectfully requests that this Court impose a non-Guidelines sentence of time-served, in the event the Guidelines analysis the Court adopts precludes imposition of a sentence of time-served. Mr. Nogbou has already spent almost twelve months in jail. This time is sufficient to meet the goals of 18 U.S.C. § 3553(a).

## A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE SUPPORT A NON-GUIDELINES SENTENCE OF TIME-SERVED

The first factor of 18 U.S.C. § 3553(a) instructs the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.

Due to circumstances beyond his control, Mr. Nogbou is unable to supply any letters supporting this Memorandum. Mr. Nogbou does not have any family to speak of and had no way to contact his friends. Mr. Nogbou has experienced life as a homeless person and since

arriving in the United States, he has focused on bettering himself through education at various colleges and universities. PSR, at p. 9. Mr. Nogbou has struggled to find consistent employment, but not for lack of trying. Further, Mr. Nogbou has no previous history of violence and poses no threat to society.

The Indictment alleges that on August 22, 2007, as Mr. Nogbou was attempting to enter the Worth Street entrance to the United States District Courthouse located at 500 Pearl Street, he "intentionally struck Court Security Officer Vincent Esposito ("CSO Esposito") in the face . . . causing CSO Esposito to suffer cuts and abrasions and resulting in the need for the CSO to receive medical attention." Paragraph 2(b) of the Criminal Complaint alleges that Mr. Nogbou "punched" the CSO in the face. However, reviewing the security video of the incident reveals a lack of any observable "punch" to CSO Esposito's face and tends to contradict the initial basis for Mr. Nogbou's arrest. Mr. Nogbou was not arrested until after he stated he was going to file a complaint against the CSOs at the security checkpoint.

It is important to note that Mr. Nogbou was entering the Courthouse for a lawful purpose. He is a pro se litigant in a pending civil matter, Nogbou v. Lore, et al., 07 Civ. 8515 (RWS).[15] On August 22, 2007, Mr. Nogbou was attempting to enter the Courthouse in order to file an Amended Complaint, which was among the items recovered following his arrest.

A review of the video results in the following timeline. At 12:13:00, Mr. Nogbou can be seen entering the revolving door of the Worth Street entrance of the Courthouse. At 12:13:07, Mr. Nogbou can be seen patiently standing at the entrance of the security checkpoint area of the lobby, waiting for his turn to go through the security check. As the security area

---

[15]    Mr. Nogbou would like to note that his present incarceration has presented numerous obstacles for him to overcome in order to properly assert his claims in that action.

10

ahead of him clears, he walks straight to the security table and begins emptying his pockets and jacket into the security bin at 12:13:51.

At 12:14:32, Mr. Nogbou was still outside the metal detector (at the security area's entrance) when CSO Esposito motioned him to come through the metal detector. At 12:14:36, while Mr. Nogbou is walking through the metal detector, CSO Esposito walks up and meets Mr. Nogbou halfway. CSO Esposito's arms are crossed behind his back as he approaches Mr. Nogbou, whose arms are in the air. At 12:14:55, Mr. Nogbou can be seen taking the straps off of his coverall. CSO Esposito cannot be seen fully in the video, while Mr. Nogbou has one of his arms in the air and the other is holding up one side of his pants. At 12:15:22, Mr. Nogbou can be seen turning away from CSO Esposito and engaged in conversations with the other CSOs.

At 12:15:34, Mr. Nogbou can be seen returning to CSO Esposito. Mr. Nogbou again holds one arm in the air while his opposite hand holds up one side of his pants. However, CSO Esposito cannot fully be seen because he is scanning Mr. Nogbou's feet at this point.[16] At 12:15:54, CSO Esposito pushes Mr. Nogbou into the corner of the security table. Mr. Nogbou can be seen in a verbal exchange with the other CSOs. Mr. Nogbou is released at 12:16:09 and the CSOs motion for him to leave at 12:16:15.

At 12:16:24, a CSO returns Mr. Nogbou's property to him, which Mr. Nogbou picks up from the security bin. At 12:17:00, Mr. Nogbou can be seen working something in his hand. Mr. Nogbou is then placed under arrest at 12:17:21. At 12:18:51, Mr. Nogbou is taken in his underwear into the lobby towards the elevators.

At 12:16:07, the video clearly depicts Mr. Nogbou being allowed to walk back through the metal detector, and he began to pick up his personal belongings on the table for the

---

[16]    Mr. Nogbou provided the description of CSO Esposito's actions when he is off-camera.

purpose of leaving the building. Mr. Nogbou contends that after he swept the wand out of his pants he was requested to leave the building by the CSOs. Mr. Nogbou voiced his concern that he was being denied access to the building for a proper purpose, but then complied with the CSOs' request and attempted to leave the building.

As he gathered his personal effects from the security tray, Mr. Nogbou engaged the CSOs in a discussion in which he suggested he would bring a civil action against them for denying his access to the Court. He relates that as he was participating in this discussion, he attempted to activate his cell phone, informing the CSOs that he intended to take their photographs to assist his complaint. It is at that time Mr. Nogbou was placed in custody. A cellular telephone was amongst Mr. Nogbou's personal effects.

Given these circumstances and the nature of the events, a sentence of time-served is sufficient punishment for Mr. Nogbou. See United States v. Collado, No. 07 Cr. 1144(HB), 2008 WL 2329275 (S.D.N.Y. June 5, 2008). If the Court adopts the recommended sentence calculation in the PSR, a non-Guidelines sentence of time-served is warranted in this case based on the nature and facts and circumstances of the offense.

## CONCLUSION

Time-served is an appropriate sentence for Mr. Nogbou. He wished to enter the Courthouse for a lawful purpose. Mr. Nogbou complied with the proper requests of CSO Esposito as CSO Esposito further inspected his midsection with the wand. By sweeping the wand away from his groin area, Mr. Nogbou did not intend to hurt anyone. Mr. Nogbou's conduct was occasioned by the wand's close proximity to his groin area and his discomfort with, and surprise at, this occurrence.

Based on the nature and circumstances of the events of August 22, 2007, the lack of intent to harm, and the jury's finding of no bodily injury, the defense submits that time-served

is a proper and just sentence for Mr. Nogbou. This can be achieved in three ways. First, application of Section 2A2.3, without or with the upward adjustment for bodily injury, results in a recommended sentence of 0-6 months or 4-10 months, respectively. Mr. Nogbou has served more than the high end of these sentencing ranges. Second, application of Section 2A2.4 without the two-level upward adjustment for bodily injury results in a range of 12-18 months. Mr. Nogbou has nearly served a sentence at the low end of this sentencing range. Third, if the Court adopts the Guidelines calculation in the PSR, a non-Guidelines sentence is justified based on the nature and circumstances of the offense.[17]

Dated: New York, New York
      August 6, 2008

Respectfully submitted,

Linklaters LLP

By:    /s/
        Lance Croffoot-Suede (LC-3725)
        Danielle M. Randazzo (DR-1198)
        Jared R. Jenkins (JJ-0531)
        1345 Avenue of the Americas
        New York, NY 10105
        (212) 903-9000
        (212) 903-9100 (fax)

*Attorneys for Defendant Rodolphe Nogbou*

---

[17] In the alternative, if the Court does not determine that a sentence of time-served is appropriate, we submit that Mr. Nogbou should be sentenced to the low end of the range suggested in the PSR and receive a sentence of 18 months imprisonment.

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States

     -against-

Rodolphe Nogbou

07 CR. 814 (JFK)

## DEFENDANT'S SENTENCING MEMORANDUM ON HIS OWN BEHALF

TO HONORABLE JOHN F. KEENAN
    UNITED STATES DISTRICT JUDGE
    UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
    500 PEARL STREET
    NEW YORK, NY 10007

    John P. Cronin
    Assistant United States Attorney
    United States District Court
    Southern District Of New York
    One St. Andrew's Plaza
    New York, NY 10007

    Lance Croffoot-Suede
    Defendant Counsel
    Attorney At Law
    Linklaters LLP
    1345 Avenue Of The Americas
    New York, NY 10105

FROM DEFENDANT
    RODOLPHE NOGBOU
    # 60326-054
    MCC-NEW YORK
    150 PARK ROW
    NEW YORK, NY 10007

New York, New York
August 04, 2008

Page 1

Your Honor:

RODOOLPHE NOGBOU, defendant in the above mentioned matter, is scheduled to be sentenced on August 14, 2008, for being found guilty of "Assault Without Bodily Injury", following a trial which ended on January 11, 2008; and upon and Indictment which charges that:

> "On or about August 22, 2007, in the Southern District of New York, Rodolphe Nogbou, the defendant, unlawfully, willingly, and knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 114, while such person was engaged in and on account of the performance of official duties, and in the commission of said acts, did inflict bodily injury, to wit, Nogbou intentionally struck Court Security Officer Vincent Esposito ("CSO Esposito") in the face...causing CSO Esposito to suffer cuts and abrasions resulting in the need for CSO Esposito to receive medical attention including stiches.
> (Title 18, United States Code, Section 111(a), (b).)"

And the complaint states that:
> "Nogbou punched the court security officer in the face, while the court security officer was using a wand to perform a security check."

The defendant is submitting this sentencing memorandum on his own behalf, because of the divergences of views between his Court appointed CJA counsel, and him (defendant), concerning the nature and circumstances of the events of August 22, 2007, and the significance of the jury's verdict and findings.

This defendant's sentencing memorandum is to give the positions of the defendant, and to reflect the verdict and findings of the jury, for sentencing purposes.

Page 2

It ought to be noted that, the defendant's counsel's sentencing memorandum is a view of the counsel of this matter at hand, 07 CR. 814(JFK); consequently, it must not be viewed as an ultimate position of the defendant.

For, the defendant submits that, in reviewing the two sentencing memoranda, the Court consider the view of the defendant at points of divergences between counsel and defendant. Simply because counsel is not a witness to the events of August 22, 2007, and is not in position to modify the findings and verdict of the jury.

Also, the defendant had attached a copy of his Objections to the Presentence Report, for the purposes of sentencing.

The defendant would like to bring to the attention of the Court that the probation officer had not responded to the objections of the defendant to the Presentence Report; consequently, there is no revised version of the presentence Report.

Respectfully Submitted,

Dated: New York, New York
      August 04, 2008.

Rodolphe Nogbou
# 60326-054
Defendant
MCC-New York
150 Park Row
New York, NY 10007

Page 3

**DEFENDANT'S SENTENCING MEMORANDUM**
**ON HIS OWN BEHALF**

TABLE OF CONTENTS

PAGE

CAPTION – COVER ......................................
Cover Letter ........................................ 1-2

I. PRELIMINARY STATEMENT ............................. 4
II. GUIDELINES ANALYSIS .............................. 5
III. ARGUMENT ....................................... 6
    A. The Court Has Discretion To Impose A Fair
       Sentence ..................................... 6
    B. The Nature And Circumstances Of The Events
       Support A Sentence Of Time-Served ............ 8
       1. Elements of 18 U.S.C. §111(a) ............. 9
       2. Uncontroverted facts ..................... 10
       3. Disputed issues .......................... 13
IV. TIME-SERVED IS AN APPROPRIATE SENTENCE GIVEN THE
    FACTS OF THIS CASE .............................. 15
V. ISSUES CONCERNING THE PRESENTENCE REPORT ......... 16
VI. ISSUES CONCERNING THE DETAINER SET ON THE PRO SE
    LITIGANT FOR FURTHER INCARCERATION ............. 17
VII. CONCLUSION ..................................... 18

Page 4


## I. PRELIMINARY STATEMENT


   RODOLPHE NOGBOU, defendant, respectfully submits on
his own behalf, this Sentencing Memorandum to assist the Court
in determining his sentence.
   Nogbou respectfully requests that, the Court impose
a sentence of time-served for being found guilty of "Assault
Without Bodily Injury", which would fall under 18 U.S.C. §111(a),
even though, the particular act of assault had never been stated.

1.   Nogbou was charged in an Indictment which reads that:
 "On or about August 22, 2007, in the Southern District of
 New York, Rodolphe Nogbou, the defendant, unlawfully,
 willfully, and knowingly did forcibly assault, resist, oppose
 impede, intimidate, and interfere with a person designated
 in Title 18, United States Code, Section 114, while such
 person was engaged in and on account of the performance
 of official duties, and in the commission of the said acts,
 did inflict bodily injury to wit, Nogbou intentionally struck
 Court Security Officer Vincent Esposito ("CSO Esposito")
 in the face...causing CSO Esposito to suffer cuts and
 abrasions resulting in Esposito to receive medical attention,
 including stiches.
 (Title 18, United States Code, Section 111(a), (b))."

 The complaint states that:
     "Nogbou punched the court security officer
     in the face while the court security officer
     was using a wand to perform a security check."

2.   The indictment resulted from an incident that took
 place at the security checkpoint, in the lobby of the Worth
 Street entrance of the United States Patrick Monihan
 Courthouse, when Nogbou, a Pro Se litigant (and regular
 visitor) was coming to serve an amended complaint.

3.   Following a trial in January 2008, and by means of
 a special jury form (objected by defendant and questioned
 by the jury), defendant had been found guilty of "Assault
 Without Bodily Injury" (which does not specify the particular
 act of assault committed by the defendant, on August 22,
 2008).

4.   However, even though, the particular act of assault
 had never been stated, and for the purposes of sentencing
 only, the verdict of "Assault Without Bodily Injury", will
 be assumed to fall under 18 U.S.C. §111(a).

Page 5

5.        Nogbou has zero criminal history points, and is in
criminal history category I. The Presentence Report ("PSR")
   sets out a sentencing range of 18-24 months of incarceration
   with no possibility of probation.

6.        The defendant respectfully submits that, the
   calculation of Nogbou's sentence is incorrect; and the proper
   sentence should be 0-6 months, based on and adjusted offense
   level of 7, and a criminal history of category I.

7. Nogbou had been incarcerated since August 22, 2007, and as
   of August 14, 2008, he will have spent almost 12 months (a
   year) in jail. This is twice the recommended sentence at
   an offense level 7.


## II. <u>GUIDELINES ANALYSIS</u>


8.        The jury had found Nogbou guilty of "<u>Assault Without
Bodily Injury</u>" by means of a special jury form which does
   specify the particular act of assault committed by the
   defendant on August 22, 2007.

9.        The matter under speculation in this instance of
   sentencing, is what, the special jury form meant by "<u>Assault
Without Bodily Injury</u>"; and the jury had also questioned
   this special form as a result of confusion, and the defendant
   had objected to the use of the said special jury form.

10. Moreover, the defendant holds that, due to the fact that,
   no specific act of assault had been stated or declared by
   the special jury form, the Court may apply a sentence which
   reflects the lack of a specific act of assault committed
   by the defendant on August 22, 2007 (in the verdict of
   "<u>Assault Without Bodily Injury</u>"); otherwise, it would be
   charging and sentencing the defendant for assault, without
   showing the specific act of assault committed, for which
   the defendant is condemned.

11.        For, the defendant submits, that the Court apply the
   lowest level of assault; which would naturally not fall
   under U.S.S.G. §2A2.4 (as stated in the PSR).

12.        Accordingly, the defendant respectfully submits that
   his proper advisory guideline level is 7. With a criminal
   history category of I, his guideline range is 0-6 months.

Page 6

13.        Were the Court to determine that the enhancement is
           applicable, the defendant's guideline range at level 9,
           would be 4-10 months. Notably, the high end of the enhanced
           guideline range, which is still less time than the defendant
           has been incarcerated.


                    III. ARGUMENT


14.        A. THE COURT HAS DISCRETION TO IMPOSE A FAIR SENTENCE


15.                    The Supreme Court recently reiterated the
           the advisory nature of the U.S. Sentencing Commission
           Guidelines in <u>Gall v. United States</u>, 128 S.Ct. 586 (2007)
           and <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007).

16.        The two cases extended the line of cases that return
           sentencing discretion to the trial Courts. <u>See United States
           v. Booker</u>, 543 U.S. 220 (2005); <u>United States v. Crosby</u>,
           <u>397 F.3d</u> 103 (2nd Cir. 2005).

17.        A sentencing Court is no longer bound by the sentence
           calculated in accordance with the Guidelines, and may impose
           a sentence less than that recommended by the Guidline, if
           it is sufficient to carry out the law.

18.        In <u>Gall</u>, the Supreme Court stated that, the Guidelines
           should be the starting point for the District Court to
           calculate a sentence and not the only consideration. <u>Gall</u>,
           128 S.Ct. at 596. The Court went on to state, "[T]he <u>district</u>
           judge...may not presume that the Guideline range is
           reasonable. He must make an individualized assessment based
           on the facts presented."

19.        <u>Gall</u>, 128 S.Ct. at 596-97. Courts must continue to
           consider all of the factors listed in section 18 U.S.C.
           §3553(a) when determining a defendant's sentence, rather
           than solely looking at the sentencing range pursuant to
           the Guidelines.

20.        In <u>Kimbrough</u>, the Court calls this an "overarching
           provision", and emphasizes that §3553(a) "permits the court
           to tailor the sentence in light of other statutory concerns
           as well." <u>Kimbrough</u>, 128 S.Ct. at 570 (quoting <u>Booker</u>, 543
           U.S. at 245-46).

21.       Under section 3553(a), Courts should consider a variety
of factors, including the nature and circumstances of the
offense and the history and characteristics of the defendant;
the need for the sentence imposed, to reflect the seriousness
of the offense, to promote respect for the law, and to
provide just punishment for the offense; to afford adequate
deterrence to criminal conduct; whether the sentence will
protect the public from further crimes of the defendant;
the kinds of sentence and sentencing range established for
the applicable category of offense committed by the
applicable category of defendant as set forth in the
guidelines; the need to avoid unwarranted sentence
disparities among defendants with similar records who have
been found guilty of similar conduct.

22.       This two-step sentencing process (considering the
guidelines and then independly looking at the 3553(a)
factors) gives courts greater discretion when determining
the appropriate sentence in a case.

23.       Gall, 128 S.Ct. at 594; Kimbrough, 128 S.Ct. at 574;
Booker, 543 U.S. at 256; Crosby, 397 F.3d at 110-13;
United States v. Martinez, 413 F.3d 239, 243 (2nd Cir. 2005)
("[J]udges imposing sentence in accordance with Booker may
exercise greater discretion than they could have exercised
under the pre-Booker regime."); United States V. Barnett,
398 F.3d 516, 528 (6th Cir. 2005) ("Under the new post-Booker
framework, the district court is empowered with greater
discretion to consider the factors provided in 18 U.S.C.
§3553(a) in determining a proper sentence.")

24.       To assist this determination, a court is entitled
to find "all the facts appropriate for determining either
a guidelines sentence or a non-guideline sentence." Crosby,
397 F.3d at 113.

25.       For the reasons set forth more fully below, and in
light of the fact that this Court may impose a materially
different sentence that a guidelines sentence, the defendant
respectfully requests that, the Court impose a sentence
of time-served.

26. Nogbou has alrealdy spent almost twelve months in jail.
This is twice the recommended sentence at an offense level
of 7;  this is in any case sufficient to meet the goal of
18 U.S.C. §3553(a).

27.     B. THE NATURE AND CIRCUMSTANCES OF THE EVENT SUPPORT
        A SENTENCE OF TIME-SERVED

28.             Factors of 18 U.S.C. §3553(a) intruct the
    Court to consider the nature and circumstances of the offense
    and the history and characteristics of the defendant; the
    need to avoid unwarranted sentence disparities among
    defendants with similar records who have been found guilty
    of similar conduct.

29.     The Indictment alleges that:
                "On or about August 22, 2007, in the Southern
                District of New York, Rodolphe Nogbou,
                the defendant, unlawfully, willfully, and
                knowingly did forcibly assault, resist,
                oppose, impede, intimidate, and interfere
                with a person designated in Title 18,
                United States Code, section 114, while
                such person was engaged in and on account
                of the performance of official duties,
                and in the commission of said acts, did
                inflict bodily injury, to wit, Nogbou
                intentionally struck Court Security Officer
                Vincent Esposito ("CSO Esposito") in the
                face...causing CSO Esposito to suffer cuts
                and abrasions resulting in the need for
                CSO Esposito to receive medical attention,
                including stiches.
                (Title 18, United States Code, Section
                111(a), (b).)"

        The complaint states that:
                "Nogbou punched the court security
                officer in the face while the court
                security officer was using a wand to
                perform a security check."

30.     The incident is almost completely captured on the
    court security surveillance video, a copy of which is part
    of the record in this case.

31.     As discussed in more detail below, a review of the
    video tails to reveal any evidence to support that the
    defendant "punched" CSO Esposito.

32.     The lack of any observable "punch" to CSO Esposito's
    face, tends to contradict the initial basis for Nogbou's
    arrest.

Page 9

33.                    1. <u>Elements of 18 U.S.C. §111(a)</u>

34.                    Section 18 U.S.C. §111(a) provides:

35.        "Whoever forcibly assaults, resists, opposes, impedes,
    or interferes with any federal officer while engaged in
    or on account of the performance of his duties is guilty
    of the offense."

36.        There are four elements to the simple offense:
        (1) the victim must be a federal officer;

        (2) the defendant must forcibly assault, or resist, or oppose
            or impede, or intimidate, or interfere, with the victim
            and this forcible action must involve actual physical
            contact with the victim;

        (3) at the time the victim must be engaged in the performance
            of official duties;

        (4) and the defendant must act willfully.

37.        As discussed below, the defendant submits that,
    fundamental factual issues exist, concerning whether Vincent
    Esposito was a federal officer on August 22, 2007 as defined
    under 18 U.S.C. Section 114; and that a review of the video
    reveals factual concerns, whether the defendant acted
    "forcibly" and "willfully".

38.            (a) Vincent Esposito is an employee of Akal Security
                Inc., whose deputation certificate (under previous
                contract with the United States Marshall's Office)
                had been expired since 2002. Vincent Esposito
                the Akal Security Inc., employee did not have
                any deputation certificate for the contract in
                effect on August 22, 2007 (date of the incident).
                However, this fundamental fact had been kept away
                from the jury.

            (b) <u>Forcibly</u> means by use of force. So too is a
    defendant's present ability to inflict bodily harm coupled
    with a threat or attempt to inflict present bodily harm.
    See Sand, Federal Jury Instructions, Instruction 14-4.

            Although the government need only prove the defendant
    did any one of the several alternative acts (assault, resist,
    oppose, impede, intimidate, or interfere), all the acts
    are modified by the word "<u>forcibly</u>".
            Therefore the government must demonstrate, defendant's
    use of force.

Page 10

Moreover, the jury was required to be unanimous as to which of the following aternative acts Nogbou forcibly engaged.

> (c) "Assault" means <u>unlawfully attempt with force and violence to do injury</u> to the person of another.

> (d) "Resist" is to oppose by physical power, striving against, exerting one's self to counteract defeat or frustrate.

> (e) "Oppose" is to resist by physical means.

> (f) "Impede" is to stop progress, obstruct or hinder.

> (g) "Intimidate" is to make timid or fearful, to inspire or affect with fear, to frighten, deter or overawe.

> (h) "Interfere with" is to come into collision with, to intermeddle, to impose, to hinder, to intervene.

See Sand, Federal Jury Instructions, Instruction 14-6, 14-7.

> (i) <u>Willfully</u> means that, the defendant acted voluntarily and intentionally and not by mistake or accident. Sand supra, Instruction 14-9.

39.          **2. Uncontroverted Facts**

40.                As stated above, the existence of a surveillance video allows for an objective review of the incident.

41.          As a preliminary matter, the Court is reminded that, Nogbou had been a regular visitor of the Courthouse since 2005. The defendant had been a Pro Se litigant since 2005. On August 22, 2007, the defendant was entering the Courthouse for the purposes of filing an amended complaint, in a pending matter, <u>Rodolphe Nogbou v. Police Officer LoRe et al.</u>, 07 Civ. 8515(RWS), when he had been arrested. The amended complaint was among the items recovered following the defendant's arrest.

Page 11

42.      The defendant would like to bring to the attention
of the Court, that he had been denied a copy of the video
tape, which is the principal evidence in this case; thus
this had greatly impaired the defendant's ability to defend
himself properly in this case; since there are and had been
fundamental divergences of view between the counsels and
defendant, resulting in defendant making motions on his
own behalf.

43.      The defendant had requested since day one (August
22, 2007) a copy of the video tape, but he had been denied
copy of the fundamental discovery material (video tape)
by all his respective Court appointed counsels.

44.      In his motions to remove former counsel (Mr. Alan
Nelson), the defendant had reiterated his request for a
copy of the discovery material (video tape), however, his
new counsel Mr. Lance Croffoot-Suede, had not provided him
(defendant) with a copy of the principal discovery material
(the video tape), for the defendant to properly defend
himself in this case.

45.      Consequently, the defendant will provide, below, the
chronology of the incident of August 22, 2007, without the
specific time line depicted in the video.

46.      For, the time depicted in the video tape will be
designated by "At XX", for the purposes of this defendant's
sentencing memorandum on his own behalf.

47.      A review of the videotape during trial, results in
the following chronology of the events of August 22, 2007:

(a)      "At XX", Nogbou can be seen entering by the revolving door
         of the Worth Street entrance of the Courthouse.

   (b) "At XX", Nogbou can be seen quietly standing at the
            entrance of the security checkpoint area of
            the lobby, waiting for his turn to go through
            the security check.

   (c) As the the security area ahead of Nogbou cleared, he
       walks straight to the security table, and started
       emptying his pockets and jacket into the security bin
       "At XX".

   (d) "At XX", Nogbou was still outside the metal detector
            (at the security area's entrance), when CSO
            Esposito motioned him to come through the metal
            detector.

Page 12

(e) "At XX", while Nogbou is walking through the metal
         detector, CSO Esposito walks and meets Nogbou
         half way, with his (CSO Esposito) two arms
         crossed behind his (CSO Esposito) back,...then
     puts his face in the face of Nogbou (who had
     his two arms in the air).

(f) "At XX", Nogbou can be seen taking the straps of his
         coverall off.

(g) "At XX", CSO Esposito cannot fully be seen in the video;
         Nogbou has one of his arms in the air, and
         other holding one side of his pant.

(h) "At XX", Nogbou can be seen turning away from CSO
         Esposito, and engages into some conversations
         with the other court security officers.

(i) "At XX", Nogbou can be seen returning to CSO Esposito.

(j) "At XX", Nogbou can be seen holding one side of his
         pant with one hand, and the other hand raised
         in the air. However, CSO Esposito cannot fully
         be seen in the video. CSO Esposito is scanning
         Nogbou's feet at this point.

(k) "At XX", Nogbou can be seen, pushed by CSO Esposito
         into the corner of the security table. At this
         point, Nogbou can be seen in verbal exchange
         with the court security officers.

(l) "At XX", CSO Esposito releases Nogbou.

(m) "At XX", a CSO can be seen motioning to Nogbou, to leave.

(n) "At XX", a CSO can be seen given back Nogbou's property
         to him (Nogbou).

(o) "At XX", Nogbou can be seen picking up his properties
         from the security bin.

(p) "At XX", Nogbou can be seen working something in his
         hand.

(q) "At XX", the court security officers put Nogbou under
         arrest.

(r) "At XX", Nogbou can be seen in his underwear taking
         into the lobby, towards the elevators.

Page 13

48.                    3. Disputed Issues

49.              Unfortunately the video is not accompanied
      by audio, hence the nature an substance of the discussions
      between Nogbou and the court security officers cannot be
      heard.

50.        Nogbou relates that, as he entered the Worth Street
      entrance (into the lobby), he saw two females ahead of him
      in the security area. So he waited quietly outside the
      security area for his turn.

51.        As soon as the two females had cleared the security
      area ahead of Nogbou, he proceeded directly toward the
      security table, and started emptying his pockets and jacket
      into the security bin.

52.        Nogbou relates that, even before he can be ready to
      walk through the metal detector, CSO Esposito had motioned
      to him (Nogbou) to come through the metal detector.

53.        As Nogbou was walking through the metal detector,
      CSO Esposito had put his two arms behind him (CSO Esposito),
      and walked half way and met Nogbou (who already had his
      two arms in the air), and put his (CSO Esposito) face in
      the face of Nogbou; and aggressively asked (CSO Esposito)
      Nogbou to take off his pant.

54.        Nogbou had protested, of why he should  take off his
      pant. Then CSO Esposito made a step backward, and asked
      Nogbou to take off his pant down, just below his stomach.

55.        Nogbou had complied with that, and unbuckled the straps
      of his coverall.

56.        Nogbou was holding one side of his pant with one hand,
      and the other hand was raised in the air.

57.        CSO Esposito started scanning the feet of Nogbou,
      and without warning, he (CSO Esposito) grabbed one side
      of Nogbou's pant, opened it, and leaned forward to look
      inside Nogbou's pant.

58.        Nogbou had put his other hand on the opening and closed
      it.

59.        Then Nogbou had turned around to complain to the other
      court security officers, of the behavior of CSO Esposito;
      but the other court security officers were not giving any
      positive answers to Nogbou.

Page 14

60.     So Nogbou had returned to CSO Esposito to finish the
inspection.

61.     CSO Esposito started scanning the feet of Nogbou again,
and as soon as he (CSO Esposito) had raised his himself
at the level of Nogbou's private part,...and without warning,
CSO Esposito had grabbed one side of Nogbou's pant and
inserted the wand inside (Nogbou's pant).

62.     Nogbou had inserted his other hand into his pant,
and swept the wand out of his pant. The wand came out between
Nogbou and CSO Esposito, hitting no one.

63.     As soon as the wand came out, CSO Esposito started
pushing Nogbou; and had pushed Nogbou into the security
table's corner.

64.     Nogbou, then complained, of why CSO Esposito had to
do this to him.
And that he (Nogbou) will not allow them (CSOs) to obstruct
him from coming into the building to do his business.
And that, he (Nogbou) will take a civil action against
them.

65.     The court security officers had then told Nogbou to
leave; Nogbou walked back to the other side of the metal
detector, and the court security oficers had given him
(Nogbou) his properties back.

66. Nogbou had collected his belongings out of the security
bin, and after saying  to CSO Esposito that he (Nogbou)
will take his picture, and was (Nogbou) in process of setting
his (Nogbou's) camera phone, that the court security officers
had put Nogbou under arrest.

67.     Nogbou had been taken, for a moment in his underwear,
into the Marshall's office, where he had been striped and
searched.

68.     Nogbou had been put in a cell, and about three hours
later, some lawyers had informed Nogbou that, he had punched
a court security officer.
And Nogbou had been incarcerated since that day of August
22, 2007.

Page 15

69.      The video, although not fully displaying the critical
event at issue, clearly does not reveal a  punch to the
face of CSO Esposito.

70.      Indeed, Nogbou's arms are clearly visible throughout
the event; and there is not a scintilla of evidence to
demonstrate any form of assaultive contact by Nogbou upon
CSO Esposito.

71.      At least initially, upon Nogbou sweeping the wand
out of his pant, there was no attempt to arrest him.

72.      To the contrary, the video clearly depicts him (Nogbou)
being allowed to walk back through the metal detector, and
began to pick up his personal belongings out of the security
bin, for the purposes of leaving the building.

73.      Nogbou contends that, after he swept the wand out
of his pant, he was requested by the court security officers
to leave the building.

74.      Nogbou complained that he had been denied access to
the building for lawful and proper purposes; but the complied
with the court security officers' request, and was about
to leave the building.

75.      Nogbou had said to  the court security officers, that
he will bring a civil action against them, for denying him
access to the Court.

76.      Nogbou relates, that he attempted to activate his
cell phone, to take CSO Esposito's photograph to complain
about the denial of his access to the Court. It is at that
point Nogbou had been arrested.
A Cellular telephone was amongst Nogbou's personal effects.

### IV.  TIME-SERVED IS AN APPROPRIATE SENTENCE GIVEN THE FACTS OF THIS CASE

80.      The goals of sentencing are met by Nogbou for
time-served, at this point. Nogbou has an offense level
of 7, and a criminal history category of I, and had spent
almost 12 months in jail. This is twice the recommended
sentence for an offense level 7.

Page 16

81.       In United States v. Koon, 518 U.S. 81 (1996), the
Supreme Court found that the Sentencing Reform Act authorizes
district courts to depart in cases which feature aggravating
or mitigating circumstances of a kind or to a degree not
adequately taken into consideration by the Sentencing
Commission.
          Justice Kennedy, writing for the Court, advised that,
the Sentencing Commission has formulated each guideline
to apply to a "heartland of typical cases".

          Atypical cases were "not adequately taken into
consideration", and factors that may make a case atypical
provide a potential basis for departure.

82.       Certainly, the facts and circumstances set forth herein
demonstrate that, the events of August 22, 2007, were not
the type of situation contemplated by the Sentencing
Commission when promulgating U.S.S.G. §2A2.4 for offense
committed in violation of 18 U.S.C. §111.

          In light of Gall and Kimbrough, the discretion set
forth in Koon is given even greater weight.

83.       Nogbou has already spent almost twelve months in jail.
This is twice the recommended sentence at an offense level
7.


                V. ISSUES CONCERNING THE PRESENTENCE REPORT


84.                          On July 18, 2008, the defendant's counsel
Mr. Lance Croffoot-Suede, had submitted on behalf of the
defendant, to the Probation Officer, Mr. Johnny Y. Kim, a
version of the defendant's objection to the Presentence
Report.

          However, as of this 4th day of August 2008, no response
had been made to the defense.

85.       Consequently, the defendant respectfully attached
to the present Defendants' Sentencing Memorandum on his
own behalf, and copy of the defendant's objections to the
Presentence Report.

Page 17

## VI. ISSUES CONCERNING THE DETAINER SET ON THE PRO SE LITIGANT DEFENDANT FOR FURTHER INCARCERATION

86.           The defendant had been a Pro Se litigant in the Civil Court of the United States District Court, Southern District of New York, and regular visitor of the Courthouse since 2005.
          On august 22, 2007, Nogbou,...a Pro Se litigant,...was coming to serve an amended complaint when he had been arrested, upon an incident initiated and driven by CSO Esposito (an Akal Security Inc., employee, whose deputation certificate was not even valid for the previous contract in 2002, and who did not have any deputation certificate for the new contract in effect on August 22, 2007).
          Moreover, there is not a scintilla of evidence to demonstrate any form of assaultive contact by Nogbou upon CSO Esposito.

87.           Nogbou had been charged under 18 U.S.C. 111(a), (b); and had been incarcerated since August 22, 2007, and had faced serious unlawful obstructions and nuisance in litigating his matters in Court. This had resulted in disturbances in the Court proceedings, and the Court interventions had been required for any access of the Pro Se litigant inmate to Court.

88.           Further incarceration of Nogbou (Pro Se litigant) will result in further unlawful obstructions and nuisance, and disruptions in Court proceedings. In other words, this will further result in unlawful obstruction of justice.

89.           Consequently, the defendant, Pro Se litigant, respectfully requests that, the BICE detainer set upon him be removed, in light of the constitutional clauses; since there are no immigration charges against Nogbou, and this matter (07 CR. 814(JFK))'s proceedings are ongoing.
          It is only upon, the final decision of the Court of Appeals, that immigration proceedings can start. Otherwise, it will simply be an obstruction of Nogbou, from seeking justice; since the basis of his further incarceration by immigration is not yet set.

90.           Consequently, Nogbou respectfully requests that, the Detainer be removed by this Court (07 CR. 814(JFK).

Page 18

91.              VII. CONCLUSION

92.                    Nogbou is a Pro Se litigant, and was entering
         the Courthouse on August 22, 2007, for lawful purposes (to
         serve an amended complaint) when he had been arrested.

               For the purposes of sentencing, and based on the nature
         and circumstances of the events, the history and
         characteristics of Nogbou,...along with the jury's verdict
         ("Assault Without Bodily Injury"), and the lack of a specific
         act of assault committed by the defendant on August 22,
         2007,...the defendant respectfully submits that, his proper
         sentence is 0-6 months, when applying U.S.S.G. §2A2.3

               Nogbou had been incarcerated for almost 12 months.
         This is twice the recommended sentence for an offense level
         7.

               Thus, the defendant respectfully submits this
         Sentencing Memorandum on his own behalf.

Dated: New York, New York
       August 04, 2008.

                                        Respectfully Submitted,

TO HONORABLE JOHN F. KEENAN
     UNITED STATES DISTRICT JUDGE
     SOUTHERN DISTRICT OF NEW YORK        Defendant
     500 PEARL STREET                     Rodolphe Nogbou
     NEW YORK, NY 10007                   # 60326-054
                                          MCC-New York
     John P. Cronin                       150 Park Row
     Assistant U.S. Attorney              New York, NY 10007
     Southern District of New York
     One St. Andrew's Plaza
     New York, NY 10007

     Lance Croffoot-Suede
     Attorney At Law
     Linklaters LLP
     1345 Avenue of The Americas
     New York, NY 10105

Linklaters

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9160
Facsimile (+1) 212 903 9100
jared.jenkins@linklaters.com

DEFENDANT'S OBJECTIONS TO THE PRESENTENCE
REPORT:
> SUBMITTED IN SUPPORT OF DEFENDANT'S
> SENTENCING MEMORANDUM ON HIS OWN
> BEHALF

Defendant
Rodolphe Nogbou
# 60326-054
MCC-New York
150 Park Row
New York, NY
10007

Johnny Y. Kim
U.S. Probation Office
U.S. District Court
Southern District of New York
500 Pearl Street, 7th Floor
New York, NY 10007

**By Email and Regular Mail**

July 18, 2008

**Re:**    **U.S. v. Rodolphe Nogbou, 07-CR-814-01 (JFK)**

Dear Mr. Kim:

As you know, Mr. Alan Nelson previously represented Mr. Nogbou in the above-captioned case. Lance Crofoot-Suede was appointed as substitute counsel on May 7, 2008. I am assisting Mr. Crofoot-Suede in his representation of Mr. Nogbou. After reviewing the Presentence Investigation Report ("PSR") prepared on April 16, 2008, Mr. Nogbou would like to correct certain inaccuracies contained therein. This letter details those inaccuracies, in the hope that the items will be amended in your final report.

### Introduction (pages 1-2 of the PSR)

On page 2, Mr. Nogbou's education level is listed as "High School". Although Mr. Nogbou has not received a college degree, he has attended multiple colleges as listed in paragraphs 38-43 of the PSR and would like this section to reflect his attendance.

On page 2, Mr. Nogbou objects to the term "Illegal alien" under his Citizenship status. Mr. Nogbou would like the PSR to state that he is a citizen of the Ivory Coast.

This communication is confidential and may be privileged or otherwise protected by work product immunity.

Linklaters LLP is a multinational limited liability partnership registered in England and Wales with registered number OC326345 including solicitors of the Supreme Court of England and Wales, members of the New York Bar and foreign legal consultants in New York. It is regulated by the Law Society of England and Wales. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ, England or on www.linklaters.com.

Please refer to www.linklaters.com/regulation for important information on our regulatory position.

Linklaters

### Remainder of the PSR (by paragraph)

#### Paragraph 1

Mr. Nogbou objects to paragraph 1, and requests the PSR be amended to include the entire language of the indictment, and requests the following language from the indictment and complaint be included. The indictment states:

> "On or about August 22, 2007, in the Southern District of New York, Rodolphe Nogbou, the defendant, unlawfully, willfully, and knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 1114, while such person was engaged in and on account of the performance of official duties, and, in the commission of said acts, did inflict bodily injury, to wit, Nogbou intentionally struck Court Security Officer Vincent Esposito ("CSO Esposito") in the face…causing CSO Esposito to suffer cuts and abrasions resulting in the need for CSO Esposito to suffer cuts and abrasions and resulting in the need for CSO Esposito to receive medical attention, including stitches.

> (Title 18, United States Code, Section 111(a), (b).)"

and the complaint states:

> "Nogbou punched the court security officer in the face while the Court Security Officer was using a wand to perform a Security Check."

Mr. Nogbou requests that the quoted sections from both documents be added to the PSR.

#### Paragraph 2

Mr. Nogbou objects to paragraph 2, and requests the PSR be amended to state that he was found guilty of assault without bodily injury.

#### Paragraph 5

Mr. Nogbou objects to paragraph 5, and requests the PSR be amended to reflect that CSO Esposito's deputation certificate had expired and was not valid for the contract in effect on August 22, 2007.

#### Paragraph 6

Mr. Nogbou objects to paragraph 6, and requests the PSR be amended to reflect his version as follows:

> "As soon as Mr. Nogbou walked through the metal detector, CSO Esposito put his face in the face of Mr. Nogbou and aggressively asked Mr. Nogbou to take off his pants. Mr. Nogbou had unbuckled the straps of his coverall, and the bib fell down. just below the stomach of Mr Nogbou.

> CSO Esposito had grabbed the bib, opened it and leaned forward to look inside Mr. Nogbou's pants (that is, to look at his private part). Mr. Nogbou had used his other hand to close the opening, then Mr. Nogbou had complained to the other CSOs, but they gave him no positive answers."

Linklaters

### Paragraph 7

Mr. Nogbou objects to paragraph 7, and requests the PSR be amended to reflect his version as follows:

"Thereafter, Mr. Nogbou went back to CSO Esposito to finish the inspection. CSO Esposito scanned the feet of Mr. Nogbou, and without warning opened Mr. Nogbou's coverall bib and inserted the wand into Mr. Nogbou's pants.

Mr. Nogbou inserted his other hand in his pants and swept the wand out of his pants. The wand came out between CSO Esposito and Mr. Nogbou, hitting no one.

Mr. Nogbou had been requested by the CSOs to leave. Mr. Nogbou then told them that he would not allow them to obstruct him from coming into the building to do his business. Mr. Nogbou then told the CSOs that he would take a civil action against them; thereafter, the CSOs put Mr. Nogbou under arrest. No one was hurt at that point. Mr. Nogbou had been arrested and taken in his underwear (for a moment) into the Marshal's office. About three hours later, some lawyers informed Mr. Nogbou that he had punched a Court Security Officer. Mr. Nogbou has been incarcerated since that moment of August 22, 2007."

### Paragraph 8

Mr. Nogbou objects to paragraph 8, and requests the PSR be amended to reflect his version as follows:

"Mr. Brian Herbert, presented as a BICE Special Agent who was not in the video, and no one can prove that he was on the scene of the event (Mr. Nogbou has never seen that man in his life before the day of the testimony), had volunteered more dramatic lies than any other government witness.

More strangely, no such things as, Mr. Nogbou was throwing his arms in the air, talking, cursing, complaining even before emptying his pockets in the bin. No such thing can be seen in the video. Mr. Nogbou was not even talking. Mr. Nogbou does not curse or swear, it is against his religion. Mr. Nogbou is a son of God."

### Paragraph 10

Mr. Nogbou objects to the characterizations in paragraph 10, and requests the PSR be amended to state, "The government has not produced a single evidence to show that Mr. Nogbou had made a misrepresentation. The Jury had rejected the dramatic stories of the government witnesses, through its (the Jury's) questions to the court, and had found that no injury had taken place by rendering the verdict of 'assault without bodily injury.'"

### Paragraph 11

Mr. Nogbou objects to paragraph 11, and requests the PSR be amended to state, "Mr. Nogbou had been interviewed at the Metropolitan Correctional Center of New York ("MCC – New York"), where he had been incarcerated since January 7, 2008. Mr. Nogbou was incarcerated at MDC – Brooklyn from August 22, 2007 to January 7, 2008."

Linklaters

### Paragraphs 12-23 (Offense Level Computation)

Mr. Nogbou objects to the offense level computation in paragraphs 12-23. Mr. Nogbou was found guilty of violating 18 U.S.C. § 111(a). The jury did not find that he violated 18 U.S.C. § 111(b). The correct base offense to use in determining a sentence is § 2A2.3 ("'Minor assault' means a misdemeanor assault, or a felonious assault not covered by § 2A2.2 (Aggravated Assault).") Based on the findings of the jury and uncontroverted trial evidence, there is no evidence to support using § 2A2.4 as the starting point for a sentence calculation.

The base offense level under § 2A2.3 is 7. While Mr. Nogbou does not admit to any physical contact, because the jury found that the offense involved physical contact the two-level enhancement is applicable. There should be no increase based on § 2A2.3(b)(1) because the jury found that no one suffered a bodily injury. Using this calculation, Mr. Nogbou's Offense Level is 7. With a Criminal History Category of I, his Guideline sentence range is 0-6 months.

### Paragraph 26

In paragraph 26, Mr. Nogbou would like the PSR be amended to state, "This New York City Criminal Court case (# 2007CN001315) is the subject of a civil action filed in Federal Court, S.D.N.Y., Docket #07-CV-8515(RWS), an action brought by Mr. Nogbou against those who have staged this New York City Criminal Court case."

### Paragraph 29

Paragraph 29 should state that Mr. Nogbou's father's Christian name is "Emmanuel."

### Paragraph 32

Mr. Nogbou objects to paragraph 32, and requests the PSR be amended to describe his immigration status as follows:

"Mr. Nogbou started college in 1993 at the Borough of Manhattan Community College. Mr. Nogbou had obtained his "employment authorization" card (through the INS program for Adjustment of Residency status) more than two years before starting college. Mr. Nogbou had earned his GED in 1992.

The correct information about Mr. Nogbou is in his immigration file, #A093005698. The immigration information in the presentence report is incorrect. No charge has been filed against Mr. Nogbou in immigration court.

In December 2007, the prosecution had given Mr. Nogbou's name to the immigration service. On or about December 21, 2007, an immigration agent had visited Mr. Nogbou at MDC – Brooklyn to know Mr. Nogbou's status in the country. Mr. Nogbou told the agent that Mr. Nogbou's immigration status in the country is in his immigration file. Mr. Nogbou had briefly explained the outstanding legal issues. Mr. Nogbou requested that immigration provide him with counsel for any matter related to knowing his status in the country. No further contact has been made with Mr. Nogbou. There is no charge standing against Mr. Nogbou in immigration court."

### Paragraph 35

Paragraph 35 states that Mr. Nogbou is 5' 7" tall. Mr. Nogbou is 5' 9" tall.

### Paragraph 38

Mr. Nogbou objects to paragraph 38, and requests the PSR be amended to state, "Mr. Nogbou had attended NYU in the Spring 2003 semester. He had completed the semester even though the scholarship had been withdrawn before the end of the semester. There is an outstanding balance on the NYU tuition (reported on page 11 of the Presentence Investigation Report)."

### Paragraph 44

Mr. Nogbou would like paragraph 44 amended to include: "Between 1990 and 1991, Mr. Nogbou had taken a GED test in English, which he failed."

### Paragraph 49

Mr. Nogbou objects to the description in paragraph 49, and requests the PSR be amended to state, "Mr. Nogbou was working with New York Restoration Project through AmeriCorps to earn an AmeriCorps scholarship after one year of civil volunteerism. However, six months in the course of that work, Mr. Nogbou had been pushed out and consequently lost the scholarship."

### Paragraph 58

Paragraph 58 should be changed to reflect a total offense level of 7, as explained in our objection to paragraphs 12-23. Based on this offense level and Mr. Nogbou's Criminal History Category of I, the correct range of imprisonment is 0-6 months.

### Paragraph 62

Paragraph 62 should be changed to reflect that Mr. Nogbou is eligible for probation based on the calculations set forth in our objections to paragraphs 12-23. Mr. Nogbou would be eligible for between one and five years probation under 18 U.S.C. § 3561(c)(1) and U.S.S.G. § 5B1.1(a)(1).

### Paragraph 65

Paragraph 65 should be changed to reflect that U.S.S.G. § 5E1.2(c)(3) mandates a fine between $500 and $5000 for an offense level of 7.

### Paragraph 68

Mr. Nogbou objects to the description in paragraph 68, and requests the PSR be amended to state, "The decision of a two level enhancement was not made during the presentence interview on March 19, 2008. No decision had been rendered on March 19, 2008. It had not been any argument about what must be applied. The March 19, 2008 presentence interview was only about taking information from the defendant. It was not a session of objection to what applies, since nothing had been done yet. The jury's verdict is 'assault without bodily injury.' This does not mean 'injury was not intended.' 'Without bodily injury' means no injury."

Linklaters

### Objection to the Addendum to the Presentence Report

Mr. Nogbou states that he never waived the 35-day disclosure rule, nor did he authorize his attorney to waive the disclosure rule.

### Objections to Sentencing Recommendation

The Guideline Provisions on page 15 should be changed to reflect the levels found in our objections to Paragraphs 58, 62, and 65 of the PSR.

Mr. Nogbou is not currently aware of any U.S. Immigration and Customs Enforcement (ICE) charging documents pending against him.

Mr. Nogbou also objects to the Justification of Sentencing Recommendation found on pages 15-16.


Best Regards,

Jared R. Jenkins
Associate


cc:        Mr. Rodolphe Nogbou
           Assistant United States Attorney John P. Cronan


          The defendant also objects to the PSR as a whole,
simply because, this PSR is not a genuine document.
The copy of the PSR given to the defendant was not signed or
approved by the Probation officers. And this document will not
be accepted by any administration as a genuine document.
          The defendant counsel (Mr. Croffoot-Suede) had given
a different copy of the PSR to the defendant,...but the
signatures on that copy had been forged.
Consequently, the defendant submits that, this objection must
also be registered for the record, and for the purposes of the
defendant's sentencing memorandum on his own behalf.

Dated: August 04, 2008.                    Respectfully Submitted,

TO HONORABLE JOHN F. KEENAN
   United States District Judge             Rodolphe Nogbou
                                            # 60326-054
   John P. Cronin                           Defendant
   Assistant U.S. Attorney                  MCC-New York
                                            150 Park Row, NY, NY

**EXHIBIT B**

# Linklaters

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9160
Facsimile  (+1) 212 903 9100
jared.jenkins@linklaters.com

Johnny Y. Kim
U.S. Probation Office
U.S. District Court
Southern District of New York
500 Pearl Street, 7th Floor
New York, NY 10007

**By Email and Regular Mail**                                          July 18, 2008

Re:    <u>U.S. v. Rodolphe Nogbou</u>, 07-CR-814-01 (JFK)

Dear Mr. Kim:

As you know, Mr. Alan Nelson previously represented Mr. Nogbou in the above-captioned case. Lance Crofoot-Suede was appointed as substitute counsel on May 7, 2008. I am assisting Mr. Crofoot-Suede in his representation of Mr. Nogbou. After reviewing the Presentence Investigation Report ("PSR") prepared on April 16, 2008, Mr. Nogbou would like to correct certain inaccuracies contained therein. This letter details those inaccuracies, in the hope that the items will be amended in your final report.

### Introduction (pages 1-2 of the PSR)

On page 2, Mr. Nogbou's education level is listed as "High School". Although Mr. Nogbou has not received a college degree, he has attended multiple colleges as listed in paragraphs 38-43 of the PSR and would like this section to reflect his attendance.

On page 2, Mr. Nogbou objects to the term "Illegal alien" under his Citizenship status. Mr. Nogbou would like the PSR to state that he is a citizen of the Ivory Coast.

This communication is confidential and may be privileged or otherwise protected by work product immunity.

Linklaters LLP is a multinational limited liability partnership registered in England and Wales with registered number OC326345 including solicitors of the Supreme Court of England and Wales, members of the New York Bar and foreign legal consultants in New York. It is regulated by the Law Society of England and Wales. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ, England or on www.linklaters.com.

Please refer to www.linklaters.com/regulation for important information on our regulatory position.

Linklaters

### Remainder of the PSR (by paragraph)

#### Paragraph 1

Mr. Nogbou objects to paragraph 1, and requests the PSR be amended to include the entire language of the indictment, and requests the following language from the indictment and complaint be included. The indictment states:

"On or about August 22, 2007, in the Southern District of New York, Rodolphe Nogbou, the defendant, unlawfully, willfully, and knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 1114, while such person was engaged in and on account of the performance of official duties, and, in the commission of said acts, did inflict bodily injury, to wit, Nogbou intentionally struck Court Security Officer Vincent Esposito ("CSO Esposito") in the face...causing CSO Esposito to suffer cuts and abrasions resulting in the need for CSO Esposito to suffer cuts and abrasions and resulting in the need for CSO Esposito to receive medical attention, including stitches.

(Title 18, United States Code, Section 111(a), (b).)"

and the complaint states:

"Nogbou punched the court security officer in the face while the Court Security Officer was using a wand to perform a Security Check."

Mr. Nogbou requests that the quoted sections from both documents be added to the PSR.

#### Paragraph 2

Mr. Nogbou objects to paragraph 2, and requests the PSR be amended to state that he was found guilty of assault without bodily injury.

#### Paragraph 5

Mr. Nogbou objects to paragraph 5, and requests the PSR be amended to reflect that CSO Esposito's deputation certificate had expired and was not valid for the contract in effect on August 22, 2007.

#### Paragraph 6

Mr. Nogbou objects to paragraph 6, and requests the PSR be amended to reflect his version as follows:

"As soon as Mr. Nogbou walked through the metal detector, CSO Esposito put his face in the face of Mr. Nogbou and aggressively asked Mr. Nogbou to take off his pants. Mr. Nogbou had unbuckled the straps of his coverall, and the bib fell down, just below the stomach of Mr. Nogbou.

CSO Esposito had grabbed the bib, opened it and leaned forward to look inside Mr. Nogbou's pants (that is, to look at his private part). Mr. Nogbou had used his other hand to close the opening, then Mr. Nogbou had complained to the other CSOs, but they gave him no positive answers."

Linklaters

### Paragraph 7

Mr. Nogbou objects to paragraph 7, and requests the PSR be amended to reflect his version as follows:

"Thereafter, Mr. Nogbou went back to CSO Esposito to finish the inspection. CSO Esposito scanned the feet of Mr. Nogbou, and without warning opened Mr. Nogbou's coverall bib and inserted the wand into Mr. Nogbou's pants.

Mr. Nogbou inserted his other hand in his pants and swept the wand out of his pants. The wand came out between CSO Esposito and Mr. Nogbou, hitting no one.

Mr. Nogbou had been requested by the CSOs to leave. Mr. Nogbou then told them that he would not allow them to obstruct him from coming into the building to do his business. Mr. Nogbou then told the CSOs that he would take a civil action against them; thereafter, the CSOs put Mr. Nogbou under arrest. No one was hurt at that point. Mr. Nogbou had been arrested and taken in his underwear (for a moment) into the Marshal's office. About three hours later, some lawyers informed Mr. Nogbou that he had punched a Court Security Officer. Mr. Nogbou has been incarcerated since that moment of August 22, 2007."

### Paragraph 8

Mr. Nogbou objects to paragraph 8, and requests the PSR be amended to reflect his version as follows:

"Mr. Brian Herbert, presented as a BICE Special Agent who was not in the video, and no one can prove that he was on the scene of the event (Mr. Nogbou has never seen that man in his life before the day of the testimony), had volunteered more dramatic lies than any other government witness.

More strangely, no such things as, Mr. Nogbou was throwing his arms in the air, talking, cursing, complaining even before emptying his pockets in the bin. No such thing can be seen in the video. Mr. Nogbou was not even talking. Mr. Nogbou does not curse or swear, it is against his religion. Mr. Nogbou is a son of God."

### Paragraph 10

Mr. Nogbou objects to the characterizations in paragraph 10, and requests the PSR be amended to state, "The government has not produced a single evidence to show that Mr. Nogbou had made a misrepresentation. The Jury had rejected the dramatic stories of the government witnesses, through its (the Jury's) questions to the court, and had found that no injury had taken place by rendering the verdict of 'assault without bodily injury.'"

### Paragraph 11

Mr. Nogbou objects to paragraph 11, and requests the PSR be amended to state, "Mr. Nogbou had been interviewed at the Metropolitan Correctional Center of New York ("MCC – New York"), where he had been incarcerated since January 7, 2008. Mr. Nogbou was incarcerated at MDC – Brooklyn from August 22, 2007 to January 7, 2008."

Linklaters

### Paragraphs 12-23 (Offense Level Computation)

Mr. Nogbou objects to the offense level computation in paragraphs 12-23. Mr. Nogbou was found guilty of violating 18 U.S.C. § 111(a). The jury did not find that he violated 18 U.S.C. § 111(b). The correct base offense to use in determining a sentence is § 2A2.3 ("'Minor assault' means a misdemeanor assault, or a felonious assault not covered by § 2A2.2 (Aggravated Assault).") Based on the findings of the jury and uncontroverted trial evidence, there is no evidence to support using § 2A2.4 as the starting point for a sentence calculation.

The base offense level under § 2A2.3 is 7. While Mr. Nogbou does not admit to any physical contact, because the jury found that the offense involved physical contact the two-level enhancement is applicable. There should be no increase based on § 2A2.3(b)(1) because the jury found that no one suffered a bodily injury. Using this calculation, Mr. Nogbou's Offense Level is 7. With a Criminal History Category of I, his Guideline sentence range is 0-6 months.

### Paragraph 26

In paragraph 26, Mr. Nogbou would like the PSR be amended to state, "This New York City Criminal Court case (# 2007CN001315) is the subject of a civil action filed in Federal Court, S.D.N.Y., Docket #07-CV-8515(RWS), an action brought by Mr. Nogbou against those who have staged this New York City Criminal Court case."

### Paragraph 29

Paragraph 29 should state that Mr. Nogbou's father's Christian name is "Emmanuel."

### Paragraph 32

Mr. Nogbou objects to paragraph 32, and requests the PSR be amended to describe his immigration status as follows:

"Mr. Nogbou started college in 1993 at the Borough of Manhattan Community College. Mr. Nogbou had obtained his "employment authorization" card (through the INS program for Adjustment of Residency status) more than two years before starting college. Mr. Nogbou had earned his GED in 1992.

The correct information about Mr. Nogbou is in his immigration file, #A093005698. The immigration information in the presentence report is incorrect. No charge has been filed against Mr. Nogbou in immigration court.

In December 2007, the prosecution had given Mr. Nogbou's name to the immigration service. On or about December 21, 2007, an immigration agent had visited Mr. Nogbou at MDC – Brooklyn to know Mr. Nogbou's status in the country. Mr. Nogbou told the agent that Mr. Nogbou's immigration status in the country is in his immigration file. Mr. Nogbou had briefly explained the outstanding legal issues. Mr. Nogbou requested that immigration provide him with counsel for any matter related to knowing his status in the country. No further contact has been made with Mr. Nogbou. There is no charge standing against Mr. Nogbou in immigration court."

Linklaters

### Paragraph 35

Paragraph 35 states that Mr. Nogbou is 5' 7" tall. Mr. Nogbou is 5' 9" tall.

### Paragraph 38

Mr. Nogbou objects to paragraph 38, and requests the PSR be amended to state, "Mr. Nogbou had attended NYU in the Spring 2003 semester. He had completed the semester even though the scholarship had been withdrawn before the end of the semester. There is an outstanding balance on the NYU tuition (reported on page 11 of the Presentence Investigation Report)."

### Paragraph 44

Mr. Nogbou would like paragraph 44 amended to include: "Between 1990 and 1991, Mr. Nogbou had taken a GED test in English, which he failed."

### Paragraph 49

Mr. Nogbou objects to the description in paragraph 49, and requests the PSR be amended to state, "Mr. Nogbou was working with New York Restoration Project through AmeriCorps to earn an AmeriCorps scholarship after one year of civil volunteerism. However, six months in the course of that work, Mr. Nogbou had been pushed out and consequently lost the scholarship."

### Paragraph 58

Paragraph 58 should be changed to reflect a total offense level of 7, as explained in our objection to paragraphs 12-23. Based on this offense level and Mr. Nogbou's Criminal History Category of I, the correct range of imprisonment is 0-6 months.

### Paragraph 62

Paragraph 62 should be changed to reflect that Mr. Nogbou is eligible for probation based on the calculations set forth in our objections to paragraphs 12-23. Mr. Nogbou would be eligible for between one and five years probation under 18 U.S.C. § 3561(c)(1) and U.S.S.G. § 5B1.1(a)(1).

### Paragraph 65

Paragraph 65 should be changed to reflect that U.S.S.G. § 5E1.2(c)(3) mandates a fine between $500 and $5000 for an offense level of 7.

### Paragraph 68

Mr. Nogbou objects to the description in paragraph 68, and requests the PSR be amended to state, "The decision of a two-level enhancement was not made during the presentence interview on March 19, 2008. No decision had been rendered on March 19, 2008. It had not been any argument about what must be applied. The March 19, 2008 presentence interview was only about taking information from the defendant. It was not a session of objection to what applies, since nothing had been done yet. The jury's verdict is 'assault without bodily injury.' This does not mean 'injury was not intended.' 'Without bodily injury' means no injury."

Linklaters

### Objection to the Addendum to the Presentence Report

Mr. Nogbou states that he never waived the 35-day disclosure rule, nor did he authorize his attorney to waive the disclosure rule.

### Objections to Sentencing Recommendation

The Guideline Provisions on page 15 should be changed to reflect the levels found in our objections to Paragraphs 58, 62, and 65 of the PSR.

Mr. Nogbou is not currently aware of any U.S. Immigration and Customs Enforcement (ICE) charging documents pending against him.

Mr. Nogbou also objects to the Justification of Sentencing Recommendation found on pages 15-16.

Best Regards,

Jared R. Jenkins
Associate

cc:        Mr. Rodolphe Nogbou
           Assistant United States Attorney John P. Cronan