UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                           :
                                                                07 Cr. 814 (JFK)

RODOLPHE NOGBOU                   :

        Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                                       MICHAEL J. GARCIA
                                                       *United States Attorney for the*
                                                       *Southern District of New York*
                                                       *Attorney for the United States*
                                                       *of America*

JOHN P. CRONAN
Assistant United States Attorney,
*Of Counsel*



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

August 8, 2008

**By Hand and Electronically Filed**

The Honorable John F. Keenan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 533
New York, New York 10007

      Re:    <u>United States v. Rodolphe Nogbou</u>
              07 Cr. 814 (JFK)

Dear Judge Keenan:

      The Government respectfully submits this letter in advance of the defendant's sentencing, which is scheduled for Thursday, August 14, 2008, at 9:45 a.m., and in response to the defendant's sentencing brief, filed on August 6, 2008 ("Deft. Br.").

      On April 10, 2008, the Government filed a sentencing submission, responding to arguments advanced by the defendant's former counsel, Alan M. Nelson, Esq.  Because many of the same arguments are advanced again by the defendant's current attorneys, the Government only writes here briefly to address new arguments that have been raised by the defendant's current attorney.  A copy of the Government's April 10, 2008 submission is attached as Exhibit A, and incorporated by reference.

**A.**    **The Appropriate Base Offense Level Is Found At Guidelines Section 2A2.4**

      For reasons more fully argued in the Government's April 10, 2008 submission, the defendant's offense is squarely governed by U.S.S.G. § 2A2.4, resulting in a base offense level of 10.  The defendant was convicted of violating Title 18, United States Code, Section 111(a), which makes it a crime to obstruct or impede a federal officer.  Similarly, the conduct covered by U.S.S.G. § 2A2.4 is "Obstructing or Impeding Officers."  *See also* U.S.S.G. § 2A2.4 Commentary (including 18 U.S.C. § 111 as one of the statute provisions covered by that Guideline).  Moreover, as the defendant notes, Appendix A to the Guidelines specifies that 18 U.S.C. § 111 is governed

The Honorable John F. Keenan
August 8, 2008

by either Guidelines Section 2A2.2 or 2A2.4.[1]

   Nor is there any basis for applying U.S.S.G. § 2A2.3 to the defendant's offense. Section 2A2.3 simply does not apply to convictions under 18 U.S.C. § 111. *See* U.S.S.G. § 2A2.3, Commentary ("Statutory Provisions: 18 U.S.C. §§ 112, 115(a), 115(b)(1), 351(e), 1751."); U.S.S.G. Appendix A. The Application Notes to U.S.S.G. § 2A2.3 define "minor assault" as "a misdemeanor assault, or a felonious assault not covered by § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.3, Application Note 1. The defendant was not convicted of a misdemeanor assault; he was convicted of a felony assault, and that felony offense is covered by § 2A2.2.

**B. The Court Should Impose a Two-Level Upward Adjustment for Obstruction of Justice Pursuant to Guidelines Section 3C1.1**

   The Government adopts its arguments in its April 10, 2008 submission for why the Court should impose an obstruction of justice enhancement. The record from the trial clearly revealed that the defendant willfully and intentionally testified falsely concerning material matters at trial and that the two-level enhancement for obstruction of justice should be imposed. Instances of such materially false testimony are set forth fully in the Government's April 10, 2008 sentencing letter. For those reasons, the Court should find that the defendant willfully and materially committed perjury as to a material matter. *See United States* v. *Zagari*, 111 F.3d 307, 329 (2d Cir. 1997).

**C. The Court Should Impose a Two-Level Increase Because the Victim Sustained Bodily Injury, Pursuant to Guidelines Sections 2A2.4(b)(2) and 1B1.1**

   The defendant objects to a two-level enhancement for bodily injury, pursuant to Guidelines Section 2A2.4(b)(2). The defendant's argument conflates the burdens of proof at trial and sentencing.

   Initially, it is not accurate for the defendant to state that "[t]he jury, however, found that no bodily injury occurred." Deft. Br. at 6. The jury found that the Government had not proved, beyond a reasonable doubt, that the defendant was guilty of committing assault with bodily injury. *United States* v. *Watts*, 519 U.S. 148, 157 (1997) ("An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt."). The standard to resolve disputed facts at sentencing, however, is not proof

---

[1] Guidelines Section 2A2.2 does not apply in this case, as it covers "felonious assault that involves (A) a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." U.S.S.G. § 2A2.2, Appl. Note 1.

The Honorable John F. Keenan
August 8, 2008

beyond a reasonable doubt, but rather proof by a preponderance of the evidence. *See United States* v. *Cordoba-Murgas*, 233 F.3d 704, 708 (2d Cir. 2000). Regardless of the jury's acquittal on bodily injury, the enhancement is appropriately applied if the evidence established, by a preponderance, that bodily injury occurred. *United States* v. *Watts*, 519 U.S. at 157 (holding that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"); *see also United States* v. *Vaughn*, 430 F.3d 518, 526 (2d Cir. 2005) (holding that post-*Booker*, a district court may take acquitted conduct into account when sentencing a defendant), *cert. denied*, 547 U.S. 1060 (2006).

As to whether the evidence established that Officer Esposito suffered bodily injury, the defense primarily cites the defendant's own self-serving trial testimony that he did not see Officer Esposito bleeding at the time of his arrest. *See* Deft. Br. at 6. Of course, this testimony was flatly contradicted by other witnesses to the assault, including Officer Esposito himself, *see* Tr. at 72, 84, Office James Russo, *see* Tr. at 208–09, and Officer Joseph Calvacca, *see* Tr. at 235–36. As Officer Esposito explained at trial, after he was struck by the defendant, he "was hurting. It's pain." Tr. at 72. The medical records confirmed that Officer Esposito suffered bodily injury. Those records reflected a laceration above the officer's left eyebrow and head trauma, his receipt of tetanus and diphtheria shots, and the closure of the cut with a suture. Clearly, the evidence established that Officer Esposito suffered the sort of injury for which medical attention would be sought, which is sufficient for application of the two-level increase pursuant to U.S.S.G. § 2A2.4(b)(2). *See* U.S.S.G. § 1B1.1, Appl. Note 1(B) (defining "bodily injury" as including "an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought"); *United States* v. *Brown*, 200 F.3d 700, 709 (10th Cir. 1999) ("Visible injuries such as bumps, bruises, and redness or swelling are sufficient to constitute 'bodily injury.'"). As such, the evidence at trial established that it was more likely than not that Officer Esposito suffered bodily injury.

**D.     The Court Should Impose a Term of Imprisonment Within the Advisory Guidelines Range of 24 to 30 Months**

Taking into account a base offense level of 10 under U.S.S.G. § 2A2.4(a), a three-level increase for physical contact under U.S.S.G. § 2A2.4(b)(1), a two-level increase for bodily injury under U.S.S.G. § 2A2.4(b)(2), and a two-level increase for obstruction of justice under U.S.S.G. § 3C1.1, the resulting offense level is 17, yielding an advisory Guidelines range of 24 to 30 months' imprisonment.

The applicable Guidelines range provides "the starting point and the initial benchmark" for sentencing. *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007). After calculating that range, the sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a).

The Honorable John F. Keenan
August 8, 2008

        In the present case, a sentence within the advisory Guidelines range of 24 to 30 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.  As more fully discussed in the Government's April 10, 2008 submission, the defendant assaulted a federal officer, while that individual was maintaining security at this Courthouse.  Court Security Officers, like Officer Esposito, are resulting for searching visitors for dangerous weapons, explosives, or anything suspicious.  *See* Tr. at 58.  While Officer Esposito was attempting to perform his duties, the defendant aggressively struck Officer Esposito in the face.

        Nor does the defendant's depiction of the offense fully or accurately reflect the evidence adduced at trial.  The defendant entered the Courthouse at approximately 12:15 p.m., talking to himself and cursing.  *See* Tr. at 202–203.  When CSO Russo, the expediter, told the defendant to empty his pockets, the defendant responded, "this is bullshit."  Tr. at 203.  CSO Esposito similarly testified that, when instructed to empty his pockets, the defendant became "quite irritated" and "was using vulgar language and saying . . . why he had to go through all this 'bullshit' to enter our courthouse."  Tr. at 65.  CSO Calvacca recalled that the defendant entered the building, "acting erratic, speaking to himself, cursing, and raising his hands."  Tr. at 232.

        The defendant emptied his pockets, continued to mumble and curse, and walked through the metal detector.  *See* Tr. at 65–66, 205.  The activated the alarm, triggering a secondary security check, conducted by CSO Esposito using a handheld security wand.  *See* Tr. at 66, 205.  As CSO Esposito attempted to check the defendant for illegal objects, such as "weapons, explosives, things of that nature," the defendant continued to curse.  Tr. at 67.  He complained, "Why are you breaking my f'ing balls?"  Tr. at 67, 82; *see also* Tr. at 207 (CSO Russo recalling, the defendant "was spewing profanities . . . like this is bullshit, you are all assholes"); Tr. at 233 (CSO Calvacca recalling, the defendant "was saying 'fuck this' and 'fuck that,' 'this is fucking bullshit,' 'you guys are assholes,' 'why do I have to go through this fucking shit,' things like that"); Tr. at 248 (CSO Horvath recalling, the defendant "seemed to be aggravated and irate that he had to go through this process.  And there was a little cursing and swearing on his part.").

        Officer Esposito's security wand activated when it passed the defendant's waist area, which is an area where people tend to keep weapons.  *See* Tr. at 70.  Officer Esposito attempted to determine what activated the wand, and the defendant, using violent force, struck Officer Esposito near the left eye.  *See* Tr. at 71, 72.  The defendant struck Officer Esposito with a closed right fist, which he aggressively brought to the officer's face.

        The other eyewitnesses — three CSOs who were working at the security checkpoint and Special Agent Brian Herbert — each viewed the assault from a different vantage point, but each gave consistent testimony, particularly with respect to the defendant's belligerent conduct and the level of force used when the defendant struck Officer Esposito.

The Honorable John F. Keenan
August 8, 2008

CSOs Russo, Calvacca, and Horvath soon observed that CSO Esposito was bleeding from the face, and the defendant was placed under arrest. *See* Tr. at 73, 208–09, 235–36. CSO Esposito was treated briefly at the fourth floor of the Courthouse to stop the bleeding, and then was transported to New York Downtown Hospital, where he received medical attention. *See* Tr. at 88.

**E.    The Defendant's Objections to the Presentence Investigative Report**

The defense's submission also includes a July 18, 2008 letter to United States Probation Officer Johnny Y. Kim, setting forth various objections to the Presentence Investigative Report ("PSR"). The Government responds here only to certain objections that it disputes.

<u>Page 2, "Citizenship"</u>: The defendant's request that "illegal alien" be stricken should be denied, as the term properly characterizes the defendant's immigration status. As explained later in the PSR, the defendant entered the United States in at least January 1993, the then "filed an I-485 (Application to Register Permanent Residence or Adjust Status) on September 5, 2001, which was denied on December 14, 2006. He has no legal immigration status in the U.S. On December 21, 2007, a charging document was filed in immigration court." PSR ¶ 32. The Government has confirmed that this information is correct. The defendant is a visa overstay, whose I-485 Application was denied on December 14, 2006. As such, he is in this country illegally, resulting in the immigration detainer that has been lodged.

<u>Paragraph 1</u>: The request to add language from the complaint is completely unnecessary and superfluous. The relevant charging document is the Indictment, which is accurately quoted by Probation Officer Kim.

<u>Paragraph 5</u>: The defendant's request that language be added "to reflect that CSO Esposito's deputation certificate expired and was not valid for the contract in effect on August 22, 2007," should be denied as inaccurate and misleading. As the Court correctly held during the trial on January 8, 2008, "as a matter of law, court security officers are employed to assist federal officers. That is, to assist United States marshals in the performance of their official duties. He was assisting the marshal service. And for purposes of this case, a person employed under the Akal contract to assist the United States marshal in securing the federal courts is somebody who is assisting a federal officer or employee in the performance of his official duties." Tr. at 118–19.

<u>Paragraphs 6, 7, 8</u>: The defendant's proposed recitation of the factual background should be rejected, and the Court should not disturb the "Offense Conduct" as correctly presented in the PSR. In particular, several proposed changes by the defense simply were not supported by the evidence or the jury's verdict, such as: "As soon as Mr. Nogbou walked through the metal detector, CSO Esposito put his face in the face of Mr. Nogbou and

The Honorable John F. Keenan
August 8, 2008

aggressively asked Mr. Nogbou to take off his pants"; "CSO Esposito . . . leaned forward to look inside Mr. Nogbou's pants (that is, to look at his private part)"; "CSO Esposito . . . without warning opened Mr. Nogbou's coverall bib and inserted the wand into Mr. Nogbou's pants"; "The wand came out between CSO Esposito and Mr. Nogbou, hitting no one"; "Mr. Nogbou then told the CSOs that he would take a civil action against them; thereafter, the CSOs put Mr. Nogbou under arrest"; "Mr. Brian Herbert, presented as a BICE Special Agent who was not in the video, and no one can prove that he was on the scene of the event . . . had volunteered more dramatic lies than any other government witness"; and "Mr. Nogbou does not curse or swear, it is against his religion."  None of these claims was supported by the evidence of trial, in contrast to Probation's summary of the "Offense Conduct," which was wholly supported by the evidence.

   Paragraph 10: The defendant's proposed language is completely inaccurate and should be rejected.  The Government's evidence contradicted the defendant's self-serving testimony, and the jury found the defendant guilty of assaulting CSO Esposito and making bodily conduct.  As Probation noted, Your Honor, as the judge who presided over this trial, stands in the best position to determine whether an obstruction of justice enhancement is appropriate.

   Paragraphs 12–23: For reasons set forth above, the Government disagrees with the defendant's position as to the correct Guidelines calculation, and maintains that an offense level of 17, with an advisory Guidelines range of 24 to 30 months' imprisonment, is correct.

   Paragraph 32: The defendant fails to explain how the PSR's summary of his immigration status is inaccurate.  The Government has confirmed that the defendant's application for an I-485 adjustment of status was denied, and that he presently is in the country illegally as a visa overstay.  The Government further has confirmed that, on account of the defendant's illegal status in this country, the defendant was interviewed by Immigration and Customs Enforcement officials and a detainer has been lodged.  Accordingly, upon the defendant's release from Bureau of Prisons custody in connection with the instant conviction, the defendant will be transferred into Immigration and Customs Enforcement custody and will be subject to deportation proceedings.

   Paragraphs 58, 62, 65: For reasons set forth above, the Government disagrees with the defendant's erroneous Guidelines calculation.  Accordingly, the proposed changes to Paragraphs 58, 62, and 65 should be rejected.

   Paragraph 68: This paragraph contains the Probation's view with respect to other factors to be considered during sentencing.  As such, the defendant's arguments opposing a two-level enhancement for physical injury and his depiction what supposedly occurred during his presentence interview are wholly irrelevant to this paragraph.

   Objections to Sentencing Recommendation: Again, as noted above, because the defendant relies upon an erroneous Guidelines calculation, the Guidelines Provisions on page 15

The Honorable John F. Keenan
August 8, 2008

should not be changed in the manner proposed by the defendant.

### III. Conclusion

      For the reasons set forth above and in the Government's April 10, 2008 submission, a sentence within the Guidelines range of 24 to 30 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

      Respectfully submitted,

      MICHAEL J. GARCIA
      United States Attorney


By:     /s/ John P. Cronan
      John P. Cronan
      Assistant United States Attorney
      Tel.: (212) 637-2779
      Fax: (212) 637-2390

Enclosure

    Exhibit A:    Government's sentencing submission, April 10, 2008

cc:    Lance Croffoot-Suede, Esq.
      *By Federal Express and electronic mail*